(No. 36102.—■■■■■■■)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRED NEIMAN, Plaintiff in Error.

*Opinion filed March 18, 1964.*

THOMAS R. BOBAK, of Calumet City, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and JOHN J. O'TOOLE, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The defendant Fred Neiman was indicted, tried and convicted of robbery. The indictment consisted of two counts, in the first of which it was charged that he and Karl Johnson, while armed with a dangerous weapon, robbed Robert Nebgen of $300, the property of Citizens

Loan Corporation. The charges in the second count were similar except the charge "armed with a dangerous weapon" was omitted. Johnson pleaded guilty to the charges but Neiman was tried before a jury and found guilty and sentenced to the penitentiary.

The defendant contends first that the judgment should be reversed because he was not proved guilty beyond a reasonable doubt. The cause was tried before a jury who saw and heard the witnesses testify and it was for them to determine their credibility.

The evidence for the prosecution showed the following facts. Around 5:20 P.M. on July 8, 1959, the defendant and Johnson entered the offices of the Citizens Loan Corportion, Chicago, on the pretext of applying for a loan. The manager, Robert Nebgen, four employees; Bill Beder, Ed Surleta, Nancy Webb and Geraldine O'Hearn and two customers were present. Johnson produced a pistol and announced "This is a stick-up * * *." Defendant took $300.00 from a cash drawer and a safe. The two robbers then herded the manager, employees and customers into a stock room and instructed them to remain there for five minutes. The police were summoned after the robbers departed. Approximately fifteen minutes elapsed during the robbery.

The police arrested defendant and Johnson on August 28, 1959, and the following day they were subjected to a line-up. Manager Nebgen positively identified the two robbers at that time. Later at defendant's trial Nebgen again positively identified the defendant, as did Ed Surleta. Both of these identification witnesses had fifteen minutes, the time required for the robbery, to observe the defendant, and their testimony was corroborated by other evidence.

The defendant here contends that such testimony was weak because all the employees did not testify at the trial, namely Bill Beder and Miss Webb. Their absence was explained by the fact that at the time of the trial Beder was

in Phoenix, Arizona, and Miss Webb probably had returned to her home in Tennessee, and as a consequence they were unavailable. Also, the defendant further draws attention to the fact that the remaining employee could only testify that the defendant resembled the one who fitted the description of the robber.

The defendant further states that said testimony of the People was weak because Johnson, who was returned from the penitentiary to testify, stated that the defendant was not one of the robbers, and also that he was with one Bill Davis and Jose Gonzales on the day of the robbery. Considering the character of Karl Johnson, it is not strange that the jury did not give much weight to his version of the occurrence.

In addition to the foregoing, the defendant, who did not testify, contends that he was at home at the time of the robbery. In support of this contention, a baby sitter was produced who testified that the defendant was usually at home at 5:30 P.M., but she was not sure of the dates. Neiman's wife also testified that on the night in question, (she could not remember the specific date,) she came home at between 5:30 P.M. and 6:30 P.M. at which time her husband was preparing dinner. A grocery clerk also testified that the defendant sometimes purchased groceries in the afternoon, but he could not say he was in his store on July 8, 1959. In addition the defendant's wife also testified that on said date he was at the Chicago Athletic Association until after 3:30 P.M.

In spite of the foregoing, the jury apparently chose to disbelieve the witnesses of the defendant, and to believe those produced by the People. It is well settled that the testimony of the People's witnesses is sufficient to convict even though the testimony is contradicted by that of the accused. (*People v. Prochut, 27* Ill.2d, 298, 300; *People v. Washington, 26* Ill.2d 207, 210; *People v. Cox, 22* Ill.2d 534.) In the case at bar, however, we have the testimony of

two credible witnesses who both had an excellent opportunity to observe the defendant for at least 15 minutes. The jury had sufficient evidence upon which to base the conviction and correctly found the defendant guilty.

The defendant next contends that the court erred in failing to order the prosecution to produce and turn over to the defense a written statement alleged to have been made by the State's witness Nebgen.

The law is well settled that the prosecution is required to furnish on demand to the defendant for impeachment purposes specific statements in its possession made by a State's witness which have been established to exist and which are in the witnesses' own words or substantially verbatim. *People* v. *Moses,* 11 Ill.2d 84; *People* v. *Wolff,* 19 Ill.2d 318; *People* v. *Harrison,* 25 Ill.2d 407; *People* v. *Wright,* No. 37641.

In the *Moses* case three witnesses for the prosecution who identified the defendant as one of the robbers, also talked to the police on the day of the robbery and gave them a description of the robbers. This, the counsel for the defendant contended, was disclosed in certain interdepartmental records of the police department and demanded that said records be produced. The trial court inspected said records, but refused to make the same available to defense counsel because they were not public records and were not subject to subpoena. This court held this action on the part of the trial court was error. In the opinion it is stated, in substance, that the identification of the accused, as in the case here, was crucial, and inasmuch as there was no suggestion that the public interest would be prejudiced by divulging these records and, no other grounds of privilege being apparent, the court should have ordered the same produced. In other words this court enunciated the rule that where a request is made for the production of statements, the request being for specific statements and it appearing that there is evidence in the possession and control

of the prosecution favorable to the defendant that might be used for impeachment purposes, a right sense of justice demands that it should be made available, unless there are strong reasons otherwise.

In the present case the record discloses that a week prior to the defendant's trial, the trial court, by Judge Casey, upon hearing ordered the State's Attorney to furnish the defendant with statements of the People's witnesses within the next two days. The State's Attorney assured the court he would. There was no denial of the existence of the statements. However, no such statements were furnished. Immediately prior to the impanelling of the jury at the trial, a discussion between the court and counsel for the defendant occurred at which time the State's Attorney denied the existence of such statements. The defendant's counsel still insisted he be furnished statements of the People's witnesses as previously ordered. No ruling was made by the court in reference to said matter. Thereupon a jury was impanelled and the trial proceeded.

Later at the trial the People produced the witnesses Robert Nebgen and Ed Surleta. Both were material witnesses as they were the only ones that positively identified the defendant as being one of the robbers. On cross-examination Nebgen was asked whether the police had taken a statement from him and he replied that he was sure that they had, as they did something when he was talking to them on the day of the holdup. When the witness again stated that they (the police) wrote something down, the State's Attorney objected and the court sustained the objection, stating that the witness had not referred to any memorandum to refresh his memory. At the request of the defendant, the jury was retired, and he reminded the court of the order entered by Judge Casey that he be furnished statements of the witnesses for the People. The defendant further stated to the court that he wished to show, by this cross-examinaion; the existence of a written statement by

the witness Nebgen. The court thereupon adhered to its ruling and denied the right for further cross-examination, commenting that Nebgen had not testified that he had refreshed his memory from any statement.

The next material witness for the People, Surleta, who, like Nebgen, was one of the eyewitnesses to the robbery, denied on cross-examination that he had given any statement to the police, and when counsel for the defendant attempted to explore the denial of the State's Attorney that any statement made by the witness Nebgen existed, the court admonished him to change his questioning of Surleta. Surleta did, however, in the course of his cross-examination, before the same was curtailed by the court, testify that the police had taken a statement from Nebgen thereby corroborating the claim of the defendant that the police had taken such a statement from Nebgen.

The defense contends that the trial court was in error in his ruling on the cross-examination of Nebgen and also of Surleta, thereby preventing the efforts of the defendant to establish not only the existence of a statement made by Nebgen to the police, but also whether it was such a statement as the defendant was entitled to use in the impeachment of Nebgen. Certainly the court was in error in denying the efforts of the defendant's counsel concerning said purported statement on the ground that there was no proof that the witness had refreshed his memory from any such statement. (*People* v. *Wolff,* 19 Ill.2d 318.) In our opinion the court committed reversible error in its ruling and the judgment must be reversed and the cause remanded for a new trial.

It is therefore unnecesary to consider any of the other alleged errors claimed by the defendant.

*Reversed and remanded.*