(No. 42045.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ELLIS LEE WILLIAMS, Appellant.

*Opinion filed January 28, 1970.*

WARD, J., took no part.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE, Assistant State's Attorney, of counsel,) for the People.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

A post-conviction hearing was held in the circuit court of Cook County to examine the 1961 proceedings in which Ellis Lee Williams pleaded guilty to murder and received a sentence of 20 years imprisonment. Defendant contends that his plea was coerced by his privately retained counsel, and that the court's admonition before accepting his plea of guilty was insufficient. The denial of relief following the evidentiary hearing is appealed here.

Williams claims that he was not guilty of murder, though perhaps guilty of a lesser offense, and that his plea of guilty resulted from intimidation by his counsel's reference to the possibly harsher consequences of being found guilty following trial on a plea of not guilty. Williams concedes that a defendant cannot normally complain of retained counsel's advice, and after reviewing the hearing record

we find that any suggestion of a guilty plea was entirely justified under the circumstances and certainly did not constitute "deception, coercion and legally erroneous advice" as claimed.

The transcript of the coroner's inquest on the death of Hattie Mae Felton was introduced at the post-conviction hearing. The defendant's confession, revealed at the inquest, indicates the context in which defendant's counsel suggested that the apparently negotiated 20-year sentence would be a reasonable bargain in return for a guilty plea. Williams explained in his statement to the police that his "legal wife" and children lived in Georgia, but he had been living "common law" with Cora Lee Williams since 1946 in Chicago. On the night of the shooting, in February of 1961, he had gone to the home of Hattie Felton, with whom he also lived "common law" at times. Hattie had seen him earlier in the day talking to two women, and accused him of "running around". Williams protested that the women were just Cora Lee and her sister, but Hattie did not believe him. She discovered his gun under the mattress, but in a scuffle defendant retained it. More argument ensued, during which time Hattie walked to the other side of the room. When she started to come back to where Williams lay on the bed, he told her to go back where she had been. "She kept coming, so I shot at her two times." He reported how he happened to have the gun that evening: "I got it out of pawn, and I got in trouble with five other guys at 2524 Van Buren Street and I shot two of them."

Faced with this confession, and a witness who saw Williams run from the scene, we cannot conclude that counsel's advice was coercive or bred of incompetence. The additional claim that counsel had promised a sentence of 10-14 years was refuted by that attorney's testimony and the issue became one of credibility. The conclusion reached by the hearing judge on the evidence adduced will not be dis-

turbed here, since it was not manifestly erroneous. *People v. Caise*, 38 Ill.2d 486, 489.

Defendant challenges the sufficiency of the sentencing court's admonition as to the consequences of a plea of guilty, in that the absence of any reference to the right to a jury trial requires reversal. The pertinent portions of the change-of-plea proceedings are as follows:

> "THE COURT: Is there a motion, counsel?
>
> MR. COGAN: Yes. Judge, in this indictment, I have spoken to my client and he told me that he wishes to withdraw the plea of not guilty that was entered on the arraignment and to enter a plea of guilty in manner and form as charged in the indictment. Is that right, Mr. Williams?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now, Mr. Williams, I want to be sure you understand. When you plead guilty to the charge of murder, the Court can sentence you to the penitentiary for not less than fourteen years and it could be life imprisonment or could be death in the electric chair depending upon how aggravated the facts are. You understand that, the range of penalty provided by law?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Understanding that, you desire to plead guilty?
>
> THE DEFENDANT: Yes.
>
> THE COURT: I take it then you are pleading guilty because you are in fact guilty?
>
> THE DEFENDANT: I am.
>
> THE COURT: Very well. Let the plea be accepted and enter judgment on the plea."

It is now maintained that defendant is illiterate, having left school at the age of 12 to 14 after completing third grade; and that defendant expected to receive a jury trial, even

after changing his plea, and was never advised to the contrary.

The post-conviction hearing from which this appeal is taken was concluded in January of 1969. The issue of the jury trial admonition was raised by an amendment to the petition, and was only briefly argued at the hearing. No specific conclusions on this issue were stated by the hearing judge in his dismissal of the amended petition, but we may assume that the court's decision rested to some degree upon an analysis of the statutory and case law then applicable to the issue. It appears that in January of 1969, the State's Attorney's reply to defendant's contention was a rather clearly accurate summation of the law: "Under a plea of guilty, you don't have to be advised as to your right of trial by jury." This conclusion was correct under the law applicable at the time of defendant's 1961 plea of guilty. Our Rule 26 (Ill. Rev. Stat. 1961, ch. 110, par. 101.26) and section 4 of division XIII of the Criminal Code (Ill. Rev. Stat. 1961, ch. 38, par. 732) regulated the proceeding. As we have noted several times, those provisions "require that before a plea of guilty is accepted, the court must explain the nature of the offense charged and the consequences that may follow if the defendant is found guilty. It is obvious that by pleading guilty the defendant is foregoing his right to a trial of any kind, and therefore we have held that the court is not required to refer explicitly to a right of trial by jury. *People* v. *Domico,* 15 Ill.2d 590." (*People* v. *Outten,* 22 Ill.2d 146, 149; see also *People* v. *Thomas,* 27 Ill.2d 331; *People* v. *Marshall,* 23 Ill.2d 216.) It appears clear that the hearing court properly disposed of the petition for post-conviction relief if we evaluate the disposition in terms of the law as it stood in January of 1969. However, defendant urges that the subsequent decision of the United States Supreme Court in *Boykin* v. *Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709, requires reversal.

Boykin, a 27-year-old Negro, was indicted in 1966 on

five counts of common-law robbery, a capital offense in Alabama. He was arraigned three days after the appointment of counsel, and pleaded guilty to all five counts. The Supreme Court observed that, "So far as the record shows, the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court. Trial strategy may of course make a plea of guilty seem the desirable course. But the record is wholly silent on that point and throws no light on it." *Boykin,* 395 U.S. at 239, 23 L. Ed. 2d at 277, 89 S. Ct. at 1710.

A jury trial on the issue of punishment followed, as required by Alabama law. The jury returned the sentence of death on each count. The Supreme Court reversed. The court's final statement was that reversible error occurred "because the record does not disclose that the defendant voluntarily and understandingly entered his pleas of guilty." *Boykin,* 395 U.S. at 244, 23 L. Ed. 2d at 280, 89 S. Ct. at 1713.

This ruling bears strong resemblance to the decision in *McCarthy* v. *United States,* 394 U.S. 459, 22 L. Ed. 2d 418, 89 S. Ct. 1166, rendered two months before *Boykin.* In *McCarthy,* the court refused to reach any constitutional issues, explicitly restricting the decision to construction of Rule 11 of the Federal Rules of Criminal Procedure, which states: "A defendant may plea not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

The Supreme Court held that in accepting a guilty plea, the Federal judge's failure to personally inquire whether petitioner understood the nature of the charge constituted reversible error, rejecting the argument that "since petitioner stated his desire to plead guilty, and since he was informed of the consequences of his plea, the District Court 'could properly *assume* that petitioner was entering that plea with a complete understanding of the charge against him.' (Emphasis added.)" *McCarthy*, 394 U.S. at 464, 22 L. Ed. 2d at 424, 89 S. Ct. at 1170.

Williams contends that the ruling in *Boykin*, particularly in light of its similarity to *McCarthy*, requires reversal of any conviction obtained upon a plea of guilty if the trial judge's acceptance of the plea is not predicated upon the judge's explicit admonition to the defendant, on the record, regarding his waiver of the right to a jury trial. Assuming, *arguendo*, that such an analysis of *Boykin* is correct, we must determine whether it controls our decision in this case. Williams pleaded guilty nearly eight years before *Boykin* was decided; thus, if *Boykin* is to control here, it must first be determined that it is applicable retroactively. The Supreme Court left that aspect of the *Boykin* ruling unresolved, as it did in the earlier criminal procedure rulings of *Mapp* v. *Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684; *Escobedo* v. *Illinois*, 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758; *Griffin* v. *California*, 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229, and *Miranda* v. *Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.

The impact of *McCarthy's* holding was clarified by the Supreme Court one month later in *Halliday* v. *United States*, 394 U.S. 831, 23 L. Ed. 2d 16, 89 S. Ct. 1498. After an evidentiary hearing to determine the voluntariness of *Halliday's* 1954 plea of guilty, the District Court denied his motion to set aside his sentence. The First Circuit Court of Appeals affirmed, noting the "ample evidence" supporting the determination that petitioner's plea was entered volun-

tarily and with full understanding. The single question before the Supreme Court in *Halliday* was whether *McCarthy* should be applied to guilty pleas accepted prior to April 2, 1969, the date of that decision; the court decided that it should not.

Recognizing that *McCarthy* was not based upon constitutional grounds, the court nevertheless deemed it "appropriate to analyze the retroactivity of that decision in terms of the same criteria we have employed to determine whether constitutionally grounded decisions that depart from precedent should be applied retroactively." These criteria were stated to be: "(1) the purpose of the new rule; (2) the extent of reliance upon the old rule; and (3) the effect retroactive application would have upon the administration of justice." (*Halliday,* 394 U.S. at 832, 23 L. Ed. 2d at 19, 89 S. Ct. at 1499.) The court examined the *McCarthy* ruling in the context of the three criteria, and noted that the stringent requirements of *McCarthy* had been previously met in only one circuit, and that retroactive application would disturb a large number of constitutionally valid convictions. Major emphasis was placed upon the fact that a pre-*McCarthy* defendant may still resort to appropriate post-conviction remedies to correct constitutional defects in his conviction, including an allegedly involuntary guilty plea. In concluding that a post-conviction proceeding could acceptably resolve the constitutionally grounded attack, the court reiterated its statement in *Stovall* that the exent to which a "condemned practice infects the integrity of the truth-determining process * * * must * * * be weighed against the prior justified reliance upon the old standards and the impact of retroactivity upon the administration of justice." *Stovall* v. *Denno,* 388 U.S. 293, 298, 18 L. Ed. 2d 1199, 1204, 87 S. Ct. 1967, 1970.

The principles which have led that court in resolving the retroactivity issue in those cases must be followed here. The Supreme Court announced, in determining that *Mapp* v.

*Ohio* should have prospective application only, that "Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a decision retrospectively, we must then weigh the merits and demerits in each case * * *." (*Linkletter* v. *Walker,* 381 U.S. 618, 629, 14 L. Ed. 2d 601, 608, 85 S. Ct. 1731, 1738.) In holding *Escobedo* and *Miranda* nonretroactive, it was pointed out that "the choice between retroactivity and nonretroactivity in no way turns on the value of the constitutional guarantee involved." (*Johnson* v. *New Jersey,* 384 U.S. 719, 728, 16 L. Ed. 2d 882, 889, 86 S. Ct. 1772, 1778.) Finally, an examination of the predictably devastating impact of retroactively applying the *Griffin* doctrine led the Supreme Court to hold that doctrine to be prospective only. *Tehan* v. *United States ex rel. Shott,* 382 U.S. 406, 15 L. Ed. 2d 453, 86 S. Ct. 459.

We perceive no reason why the principles established by the Supreme Court in the *Linkletter, Johnson* and *Tehan* cases, and expressly followed in *Halliday,* should not guide us here. The three criteria upon which the retroactivity determination rests in constitutional rulings supported the court's conclusion that *McCarthy* ought only to be prospectively applied. The same conclusion should be reached in regard to *Boykin.* The objective of the court's holding in *Boykin* is the same as that of Rule 11—*i.e.,* to provide procedural safeguards and to assure an adequate record for review. In our case the pre-*Boykin* law, upon which great reliance had theretofore been placed, supported the judge's acceptance of William's guilty plea without specific reference to the attendant waiver of the right to jury trial. (See, *e.g., People* v. *Thomas,* 27 Ill.2d 331; *People* v. *Marshall,* 23 Ill.2d 216; *People* v. *Outten,* 22 Ill.2d 146; *People* v. *Domico,* 15 Ill.2d 590.) And finally, it is obvious, as the court noted in *Halliday,* that retroactive application of *Boykin* would severely disrupt the administration of justice and invalidate countless constitutionally valid con-

victions which, due to the passage of time and the unavailability of evidence and witnesses, could not be re-established. Guided finally by the United States Supreme Court's analysis in *Halliday*, therefore, we conclude that the ruling in *Boykin* is inapplicable here since William's plea of guilty was entered prior to June 2, 1969. See *State* v. *Griswold*, 105 Ariz. 1, 457 P.2d 331; *State* v. *Sisco*, —— Iowa ——, ——, 169 N.W.2d 542, 554 (dissent); *Commonwealth* v. *Godfrey*, 434 Pa. 532, 254 A.2d 923; but see *Phillips* v. *Smith* (S.D. Ga. 1969), 300 F. Supp. 130; *State* v. *Sisco*, —— Iowa ——, 169 N.W.2d 542; *Bishop* v. *Langlois*, —— R.I. ——, 256 A. 2d 20.

The judgment of the circuit court of Cook County is accordingly affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.