THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEROY JACKSON, Defendant-Appellant.

(No. 72-58;

Fifth District—May 29, 1973.

Robert E. Farrell, of Defender Project, of Mt. Vernon, (Edith L. James, of counsel,) for appellant.

Robert H. Rice, State's Attorney, of Belleville, (James W. Jerz and Martin P. Moltz, of Model District State's Attorneys Office, of counsel,) for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

Defendant, Leroy Jackson, pleaded guilty to the crime of murder in the Circuit Court of St. Clair County and was sentenced to the penitentiary for a term of not less than 14 nor more than 20 years. The main thrust of his appeal is the contention that the trial court erred in accepting his guilty plea without sufficient evidence of his competency. An understanding of this contention requires a detailed analysis of the events leading up to his plea.

The murder with which defendant was charged occurred on May 25,

1967. He was arrested and later arraigned on September 12, 1967, and an attorney was appointed to represent him. On October 17, in response to a petition filed by defendant's sister, the court ordered a psychiatric examination. Reports were filed by Dr. John McMahan and Dr. Frank Perez finding that their examinations revealed no evidence of any psychotic process, and that, in their opinion, defendant possessed sufficient mental capacity to understand the nature of the charge against him and was able to aid and participate with counsel in his defense.

Approximately two months later, on January 12, 1968, defendant's counsel filed another petition requesting a psychiatric examination, stating that he was unable to prepare an adequate defense because defendant wholly refused to cooperate with him relative to the facts of the case and that it appeared doubtful that defendant was capable of understanding the nature of a plea. The court ordered that defendant be given an encephalogram examination by Dr. Phillip Dennis. The encephalogram was reported as essentially normal, but the doctor's report, dated February 8, 1968, found that defendant was suffering from a bizarre psychotic disorder of a currently indescribable type, that he could not now be expected to continuously cooperate with counsel, nor could he continuously distinguish right from wrong. The report concluded that defendant's condition warranted state hospitalization and intensive observation.

On February 9, 1968, defendant was admitted to the Illinois Security Hospital and, on his initial examination, Dr. I. D. Newmark reported that he was cooperative in his behavior and seemed to comprehend, but that he would not utter a sound. On February 25, Dr. William Haines, a consulting psychiatrist, found that defendant was undergoing a sociopathic personality disturbance, but that it could be expected that he would soon be ready to be returned to court and he could see no reason for continuing to hold him in the hospital. On March 9, H. Wayne Lacey, a consulting psychologist, found that defendant was intellectually in the high, dull normal range, that his responses suggested characteristics of a sociopathic personality, that from the mental aspect it seemed that he was currently ready for trial but that he should first be required to undergo a reasonable period of psychiatric care and treatment. On March 18, Dr. Leonard Horecker, a consulting psychiatrist, diagnosed defendant's condition as a schizophrenic reaction, chronic undifferentiated type, and that he seemed to have experienced an acute exacerbation of his symptoms which, with his present improvement were no longer present. From the hospital's progress notes it appears that in the rest of March and April defendant continued to improve, was given a work assignment in the patients' dining room, and was commended for

the courteous and efficient manner with which he conducted himself and the concern he showed for his fellow patients.

■■ On May 9, 1968, defendant was brought before the court for his first competency hearing, but while the jury was being empanelled he started to disrobe and a mistrial was declared. October 21, 1968, he was again brought to court, and in his presence, his attorney informed the court that he wanted to waive his right to a jury and have the court decide his competency. In reply to a question from the court defendant confirmed this request, and the jury was thereupon considered waived and the court proceeded with the hearing.

No oral evidence was heard. The defendant introduced the report of Dr. Dennis, and the State introduced the other reports above summarized. In addition, other records were admitted relating to the mental care and treatment of defendant while he was incarcerated in a Michigan prison several years previously. All of the documents were admitted with the understanding that their contents would be what the individuals would testify to if they were present.

From the record it appears that the court reviewed these documents and basing his conclusion on such evidence, coupled with his own observation of defendant's actions, his demeanor, and appearance, he found defendant able to understand the nature and purpose of the proceeding against him, and able to assist counsel at all times in his defense. After appropriate admonitions defendant's plea was accepted.

Defendant now contends that the court, not being a qualified psychiatrist, was not competent to judge defendant's rationality on the basis of his own personal observations; that he did not have sufficient expert diagnosis to determine defendant's mental status; and that the court mistakenly based his conclusions upon the two earliest psychiatric examinations believing them to be the two latest.

We cannot agree with any one of defendant's contentions. In the first place, observation of a person's demeanor and appearance is an important, though not the only factor, to be considered in determining another's competency. Here the court had observed defendant in every one of his court appearances from time of his arraignment. He had acceded to each request for psychiatric examination and defendant had been placed in a hospital for diagnosis and treatment. The reports from psychiatrists and psychologists were numerous and all were made available to the courts, and it was on these reports, and his personal observations, that he based his decision. It was only in Dr. Dennis' report that defendant's condition was called psychotic and he even referred to it as an indescribable type. The three latest reports were by Dr. Haines, on February 25, finding that defendant was undergoing a sociopathic

personality disturbance and stating that he could see no reason for continued hospitalization; by H. Wayne Lacey, a psychologist, finding that on March 9, defendant's responses suggested characteristics of a sociopathic personality and that mentally he was ready for trial; and by Dr. Horecker, on March 18, diagnosing defendant's condition as a schizophrenic reaction which was no longer present.

■■ It was with the aid of this extensive medical background that the court reached its conclusion as to defendant's competence. We agree with his decision, for, as stated in *People v. McElroy,* 125 Ill.App.2d 237, while a person may possess a sociopathic personality and suffer from psychological and social disturbances, these circumstances of themselves are not sufficient to raise a bona fide doubt as to his competence. We conclude that defendant was competent at the time he entered his plea and that it was made with full understanding after appropriate admonitions.

■■ Defendant next contends that the court erred in accepting his plea without first inquiring into the circumstances surrounding the alleged offense. He argues that if defendant had been asked about the facts of the offense it may have appeared that his acts constituted a lesser crime than murder, or that the defense of insanity may have been available. This is an attempt to make Supreme Court Rule 402(c) retroactive, and defendant so concedes. He contends that substantial justice and due process requires that the factual basis for a plea should be determined even in those cases predating the rule. This identical question was presented to us previously in *People v. Howland,* 2 Ill,App.3d 553, and we there held that the rule should have prospective application only, based on the rationale of *People v. Williams,* 44 Ill.2d 334. The circumstances of the case before us gives us no reason to change that position.

The judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

EBERSPACHER, P. J., and G. MORAN, J., concur.