THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENNETH FIELDS, Defendant-Appellant.

(No. 70-140; )

Fifth District—July 5, 1973.

JONES, J., dissenting.

Matthew J. Moran, Deputy Director, of Defender Project, of Chicago, for appellant.

Robert H. Rice, State's Attorney, of Belleville, for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant appeals from his conviction for the crime of armed robbery (Ill. Rev. Stat., ch. 38, par. 18—2). His defense was almost totally based on alibi. Prior to trial, in answer to a motion by the State for a list of alibi witnesses and pursuant to section 114—14 of the Illinois Criminal Code (Ill. Rev. Stat., ch. 38, Par. 114—14), defendant filed a list of alibi witnesses naming five persons. After the State had rested its case, defendant's attorney made a motion to produce the statements which the State had taken from these witnesses.

After the State had rested its case, the following occurred:

"Defense Counsel: Motion to produce, I would say I supplied the Court with what I thought was the authority, People versus Crawford and the Supreme Court case, People versus Sumner, and these cases show I am entitled to these statements.

The Court: I am not sure either one of those cases has gone that far. Do you have anything else you want to put in the record, Mr. Rice?

Mr. Rice: Yes, Your Honor. We were supplied with the list of alibi witnesses pursuant to our demands upon the defendant to do this, and upon receiving the names of alibi witnesses, we did take routine statements from three of these witnesses, and oral statement from one of them. I submit to the Court these four statements hopelessly do conflict with one another and they are all Missouri people. Upon the reasons we have already given for the Court's denial of this defense motion to produce these, it is the position of the State if we were to have to reveal what their own witnesses have previously stated we would be in the position that the defense could then call only those witnesses that they could hope to reconcile the statements they have given with whatever evidence may already be before the Court. We feel all impeachment possibilities by the State would be nullified completely. They are all four in hopeless conflict with one another on the facts in this case.

The Court: The Crawford case may indicate that the law may someday be that far that you will have to do that. I don't know that it says that at this point. It is very broad. I understand this case is on appeal to the Supreme Court of Illinois now. And I don't think the Sumner case, which is a Supreme Court case, went that far. None of these decisions touch directly on this question of alibi witnesses which might be handled quite differently. There will be reason for handling it quite differently than the other statements talked about in the Crawford case. For that reason, I don't believe the law at this time requires the State to produce these alibi witness statements, and I am going to deny the defense motion.

Defense Attorney: I have an evidence deposition I would like to read in this case of Mary Dudley. She is a crippled lady. She is unable to come to court and her testimony is important to the defense, in that she remembers seeing the defendant at or near the time of the alleged armed robbery in East St. Louis, in St. Louis, Missouri. For these reasons I would like to read the evidence deposition to the jury.

Mr. Rice: Your Honor, we would object on the basis there is no authority, plus if there were, if the Civil Rules of Procedure were applicable, I don't believe this is the fashion for the evidence deposition to come before the court.

The Court: Request to read the evidence deposition is denied because I know of no authority for this to be done. Request denied."

During the closing argument the state's attorney stated:

> "You have Mrs. Brinkley testifying. They are in here trying to pull back December 30 and give him an alibi and put him somewhere at 2:30, because they know the armed robbery occurred at 2:30 on the East side. Mrs. Brinkley tells you he frequently took his wife to work. This is denied by the defendant himself. Mrs. Brinkley (we assume this was a mistake, meaning Mrs. Fields) said in her own handwriting, 'He said when he left the house he was going to see Ronald Prince, who lives on Cottage.' But the defendant can't have you think he left the house to see Ronald Prince, because he said he was going to see Lee Blevins."

He further argues with regard to the alibi witnesses:

> "They didn't do a very good job. They did not conspire maybe on this stand here today, and there is a reason for that, and that is because our investigator got to these people and got a written statement from them, and with that in our file there is not too far that these people can go."

Defense counsel's objection to the latter statement was overruled.

The first question presented is whether the trial court erred when it denied a defense motion to require the State to produce copies of statements of defense alibi witnesses obtained by the state.

We believe that *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), requires that copies of these statements be given to the defendant. For failure to meet the demands of *Williams*, we must reverse this conviction.

■■ In *Williams*, Florida's notice-of-alibi rule was held constitutional against attacks based on the Fifth Amendment's prohibition of self-incrimination only because of statutory provisions for liberal and reciprocal discovery and disclosure against the state. The opinions in *Williams* manifest that requiring a defendant to name his witnesses is a drastic, fundamental concession on his part, and can only be valid if liberal discovery is reciprocal. Justice White, for the majority, stated at 399 U.S. 81:

> "We need not linger over the suggestion that the discovery permitted the State against petitioner in this case deprived him of 'due process' or a 'fair trial.' Florida law provides for liberal discovery by the defendant against the State, and the notice-of-alibi rule is itself carefully hedged with reciprocal duties requiring state disclosure to the defendant."

Mr. Justice Black wrote his "emphatic disagreement and dissent" (399 U.S. at 116) believing that:

> "This decision, in my view, is a radical and dangerous departure

from the historical and constitutionally guaranteed right of a defendant in a criminal case to remain completely silent, requiring the State to prove its case without any assistance of any kind from the defendant himself." (399 U.S. at 108)

The majority opinion by Mr. Justice White, however, felt that these considerations were counterbalanced by reciprocal discovery against the State.

"* * * Florida law provides for liberal discovery by the defendant against the state, and the notice-of-alibi rule is itself carefully hedged with reciprocal duties requiring state disclosure to the defendant." (399 U.S. at 81)

The reason for this was stated by Mr. Justice White:

"* * * The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played." (399 U.S. at 82)

In Footnote 11 at page 82, the court noted that other states had alibi-notice requirements, but reserved judgment on their validity, as "* * * that conclusion must await a specific context and an inquiry, for example, into whether the defendant enjoys reciprocal discovery against the State."

Mr. Chief Justice Burger, concurring, stressed that the "enlarged and truly reciprocal pretrial disclosure of evidence and the move away. from the 'sporting contest' idea of criminal justice" (399 U.S. at 106), would cause both prosecutors and defense attorneys to re-examine their cases in light of the prosecution's investigation of prospective alibi witnesses. This re-evaluation would lead to disposition of cases without trial in appropriate cases. Such re-evaluation of the case is of course impossible where the prosecution refuses to turn over copies of the statements taken from the alibi witnesses, as the State refused to do in the case at bar. This violation of the demands of *Williams* requires reversal.

In *People v. Tribbett*, 90 Ill.App.2d 296, the court said at 302:·

"* * * However, if the prosecution's case is strong because it is full of surprises, this is an advantage that is unjust, because it will not square with the adversary concept—of a contest between well prepared adversaries of equal strength. Surprise negates equality and without that rough equality, a criminal trial will not produce the desired result, which is, to put it succinctly, to discover so far as human agencies can, whether a defendant is guilty or not guilty."

In the present case the defendant was compelled by statute to reveal the names of his alibi witnesses. This action by the defendant bared his defense to the State. The State investigated the witnesses and took

statements from them. The witnesses could not remember all they had said, but the State concealed such information from the defendant. This is the type of "poker game" concealment forbidden by *Williams*. The State would not have had an opportunity to take these statements except for the defendant's drastic and fundamental concession. In *Williams* the Supreme Court of the United States held that such a fundamental concession was only valid if liberal reciprocal discovery is available to the defendant. Surely that discovery extends at least to statements which are in the State's possession only because of and as a direct result of the disclosure of the defendant. We cannot sanction the State's attempt at gamesmanship. The mandate of *Williams* for liberal reciprocal discovery to the defendant is clear.

Any lawyer who has ever tried a case is reluctant to put a witness on the stand when he does not know the contents of a written statement of the witness in the possession of the opposition. It is vital for the defense to know whether or not the written statement given to the State is the same as the oral or written statement given to the defense attorney. If it is different, the defense attorney will want to ascertain which version is true. If he decides that the statement given to the State is false, he will want to inquire whether the statement was given under duress. He can only do this if he has access to the statement. On the other hand, he may ascertain that the alibi witness is not telling the truth and decide to recommend that his client permit him to negotiate a plea with the State. It may also appear that several alibi witnesses gave conflicting statements. In that event the defense attorney must have access to the statements in order to decide which of the conflicting statements is true in order for him to properly defend against the State's accusations. In the event that the statements are not furnished, counsel may well decide not to use the alibi witness at all even though he believes his client to be innocent, for experience may have taught him that discrepancies between written statements and oral testimony even from truthful witnesses are commonplace.

■■ *People v. Crawford*, 114 Ill.App.2d 230, 252 N.E.2d 483, dealt with the scope of discovery in criminal cases, and held, *inter alia*, that the authority to order pretrial discovery against the prosecution was not limited to items of physical evidence or witness' statements when further discovery was necessary to insure defendant a fair trial. Discussing the policy behind this, the majority opinion noted:

> "Failure to grant discovery or severe limitations on pretrial discovery limiting the same to statements used for impeachment tend not to lend finality to the disposition of criminal case. It is clear now that the failure to make available to a defendant evi-

614

dence which would be of a *substantial benefit* to him and which could materially affect the outcome of the case may result in the loss of a conviction." (Emphasis added.) (114 Ill.App.2d at 236.) Justice Smith dissented on the ground that only the Supreme Court had authority to promulgate discovery rules, but observed that:

> "Under our system of jurisprudence, the obligation that the guilty as well as the innocent receive a fair trial is an essential part of the obligation of the State's Attorney and his associated law enforcing agencies. I would therefore issue a caveat to State's attorneys that the failure to disclose to a defendant information which would substantially affect the innocence or guilt of such defendant, *retard or deprive him of a proper defense* or perhaps even affect his punishment may under the authorities cited in the majority opinion result in punishment for contempt, the loss of a conviction, a retrial or a dismissal of the case." (Emphasis added.) (114 Ill.App.2d at 239-240.)

The rationale that the State should disclose to defendant any information which would "substantially affect" or "be of substantial benefit to" development of a proper defense (or would "substantially affect" it), supports defendant's contention in the instant case that the State should turn over copies of statements in its possession taken from defense alibi witnesses. Certainly they would benefit defendant in that the defense counsel could better prepare his defense. Without these statements, defense counsel does not know how credible his witnesses will appear to the jury. One of the dangers of an alibi defense is that if the alibi is not believed, many jurors might believe that defendant is guilty, even if nothing in the State's evidence would lead them to that conclusion on the theory that a false alibi is indicative of guilt. Thus, information which would help defense counsel evaluate his witnesses' credibility, such as the *witnesses' statements*, would "be of substantial benefit to him" and should be given to him under the *Crawford* rationale.

> "There have been developments on several fronts toward constitutionalization of the standards of broad discovery. In other areas of criminal procedure, the Constitution has been applied to control police investigative practices even when enforcement of the constitutional limits results in the suppression of reliable and probative prosecution evidence and thereby diminishes the fact-finding effectiveness of the criminal trial. This has properly been done in the pursuit of fundamental values that outweigh the importance of the conviction of any particular law violator. The Constitution has also been applied to protect the right of the defendant to an effective presentation of his defense at trial before

a proper tribunal through the right to counsel, the right of confrontation, and the right to a jury trial. Equally appropriate for the imposition of constitutional standards is discovery as a procedure for assisting a defendant in the ascertainment of the fact necessary to establish his defense, complete or partial. Several constitutional provisions are well adapted to this purpose. It is constitutionally as important that a defendant be informed of the evidence as it is that he be informed of his rights." *Criminal Discovery*, 50 N.C.L. Rev. 450 (1972).

The Sixth Amendment to the United States Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the States and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense."

In *Chambers v. Mississippi*, 35 L.Ed.2d 297, the Court said:

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusation. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." 35 L.Ed.2d at 308.

■■ The constitution has always been applied to protect the right of the defendant to effectively defend himself at trial, including the right to effective assistance of counsel and the right to call witnesses in his behalf.

"The right to counsel is empty without the means of obtaining information about the strength or weakness of the prosecution's case on the basis of which to advise and defend the client or of obtaining evidence to use to establish the client's innocence, to mitigate his culpability, or to minimize his punishment." *Criminal Discovery*, 50 N.C.L. Rev. 463 (1972).

In the present case defendant's right to effectively defend himself has been severely hampered because of the tactics of the State in depriving him of a proper defense.

■■ We thus hold that where the defendant has furnished a list of alleged alibi witnesses to the state, the state must upon proper request furnish defense counsel with any statements subsequently taken from such witnesses.

Did the state's attorney's statement during closing argument that the

alibi witnesses did not do a good job, "and that is because our investigator got to these people and got a written statement from them, and with that in our file there is not too far these people can go," constitute reversible error?

Although many cases deal with the various aspects of the question of the propriety of a prosecutor's comments during closing argument relating to the failure of the defendant to call alibi witnesses to support his alibi, and many cases likewise deal with the issue of the propriety of a prosecutor's comments on matters not received into evidence or suppressed evidence, our research reveals only two important Illinois cases analyzing a prosecutor's comments concerning prior statements of witnesses which had not been received into evidence. These cases are *People v. Beard*, 67 Ill.App.2d 83, 214 N.E.2d 577, and *People v. Lowe*, 84 Ill.App.2d 435, 228 N.E.2d 563.

■■ The general rule is that the state's attorney may not comment on matters not sustained by the evidence or insinuate that matters not received into evidence are favorable to the state's side of the case. See *e.g.*, 23A C.J.S. 149 "Criminal Law", par. 1093; *People v. Dukes*, 12 Ill.2d 334, 146 N.E.2d 14, 67 A.L.R.2d 724; *People v. Beier*, 29 Ill.2d 511, 194 N.E.2d 280. The reasons for this are expressed in a widely quoted passage from *Scripps v. Reilly*, 38 Mich. 10 (quoted in many Illinois cases, including *Beard* and *Lowe*), as follows:

> "Everything having a tendency to prejudice or influence a jury in their deliberations which is not lawfully admissible in evidence on the trial of the cause should be, so far as possible, kept from coming to their knowledge during the trial. An impression once made upon the mind of a juror, no matter how, will have more or less influence upon him when he retires to deliberate upon the verdict to be given, and no matter how honest or conscientious he may be or how carefully he may have been instructed by the court not to permit such incompetent matter to influence him or to have any bearing in the case, it will be difficult, if not impossible, for him to separate the competent from the incompetent, or to show to what extent his impressions of convictions may be attributed to that which properly should not have been permitted to come to his knowledge."

Within the context, the question is whether the behavior of the state's attorney in the instant case in referring to the "written statement(s) * * * in our file" keep the witnesses from "go(ing)" "too far" amounted to insinuating to the jury that material not in evidence supported the state's case.

In *Beard* a murder conviction was reversed and remanded for error in

a ruling of the trial court that defense requests, for prior statements of prosecution witnesses, be made in the presence of the jury. At three points in the trial, the defense, out of the presence of the jury, requested the state to deliver any prior statements of state's witnesses, and each time the court told the defense that such a request had to be made *in the presence of the jury* and overruled defense objections to such procedure. Then, on each occasion, the court instigated the request by asking *in the presence of the jury* if the defendant wanted the statement. The defendant each time answered that he did want the statements and in each case moved for a mistrial, which motions were each time denied. Then the state's attorney, *in the presence of the jury*, offered to stipulate to the statements and again the court overruled defense objections and motions for mistrial. In final argument, the state's attorney discussed the testimony of witnesses and said, "Did she tell any different story than she ever told? Actually, it is the very statement she made to the police and I gave it to him (defense counsel)." (67 Ill.App.2d at 90.)

Defense counsel objected and moved for a mistrial. The objection was overruled and the motion for mistrial denied. The state's attorney then continued: "And I gave it to him. Did he show you jurors any contradictory statements that she previously gave to the police? No, he didn't." (67 Ill.App.2d at 90.)

The court in *Beard* found this to be error. Since defense need not use the impeaching statement, it is improper for such a procedure in the *presence of the jury* to be used, as: "It would seem that the defense attorney is put in the position of having to use the statement or appear to be hiding something from the jury." (67 Ill.App.2d at 90.) After discussing cases dealing with an attorney arguing, stating, or implying the truth of statements not introduced into evidence, and reciting the quote from *Scripps*, the court concluded that this procedure was error and reversed.

■■ The rationale of *Beard* is applicable to the instant case. Here the state, after successfully denying the defense access to the statements of certain defense witnesses, told the jury that the defense witnesses did not do a good job because the state had their written statements (copies of which were denied to the defense) and "with that in our file there is not too far these people can go." In addition to insinuating that the witnesses might be wanting to lie, this comment insinuated that the statements, which the state would not let the defense see, contained evidence favorable to the state. Under *Beard*, this is error.

In *People v. Lowe*, 84 Ill.App.2d 435, it was held that prejudicial error was committed when, instead of acting in the absence of the jury, the prosecutor stated in the presence of the jury that he was turning over

certain exhibits to defendant's counsel for identification after requesting the court reporter, in the presence of the jury, to mark for identification such exhibits, one of which was purported to be testimony of complaining witness before the grand jury and the other to be a police report of the complaining witness. No objection was made. Subsequently, during closing argument the assistant state's attorney made the following statement:

> "On top of that she has always told a consistent story. She told police officer Ali, she told the Grand Jury the entire story and you saw that we turned over any history that exists of what she told at those moments to the defense and you have not yet one iota of serious impeachment out of those statements." (84 Ill.App.2d at 437.)

Again, the defense counsel did not object. (However, the reviewing court found that the error deprived the defendant of an impartial trial, and reversed despite failure of counsel to object at trial.)

The court discussed *Beard* and the *Scripps* quotation, and applied the rule in *Beard* with the following comment:

> "In the Beard case, bringing the matter before the jury was held to be reversible error. In the case at bar the error is compounded by the state's attorney's closing argument concerning these documents. Certainly it would be rather farfetched to say that when these documents improperly are given (in the presence of the jury) to the defendant to permit him to impeach the State's witnesses, the State can argue—if the documents are not impeaching—that they should be considered by the jury as corroborating the testimony of the witnesses." (84 Ill.App.2d at 440.)

The *Lowe* rationale also supports the contention that in the instant case the state's attorney's closing argument was error. It seems equally "far-fetched" in the instant case for the state's attorney to say that when the state has denied the defense access to witnesses' statements that the state can then imply that they support the theory of the state. In *Lowe* this was considered sufficiently prejudicial to require reversal even in the absence of objection. Here, of course, the comments were objected to, and it was error for the trial court to overrule the objections.

Did the trial court err in denying admission into evidence of an evidence deposition taken from an invalid out-of-state key witness?

At the trial, defense counsel's request to read into evidence the evidence deposition of a cripple out-of-state witness whose "testimony is important to the defense, in that she remembers seeing the defendant at or near the time of the alleged armed robbery in East St. Louis, in St.

Louis, Missouri." The trial judge denied the request. At no time did the state or the court question the unavailability of the witness.

The deposition in question was an "evidence" deposition rather than a "discovery" deposition. In civil cases, Supreme Court Rule 212(b) allows the use of evidence (but not discovery) depositions for any purpose if the court finds that the deponent is unavailable because of age, sickness, infirmity, or imprisonment. On the facts given, that appears to have been the situation in the instant case. Rule 212, however, does not control in a criminal case.

Subsequently the Illinois Supreme Court promulgated Rule 414, which incorporates the rules for taking civil depositions into the criminal cases. Rule 414 was not effective until October 1, 1971, and thus not applicable to the instant trial.

In view of the foregoing, we do not believe it necessary to consider this alleged error at this time since the trial court will be governed by Supreme Court Rule 414 if this question comes up again at defendant's new trial.

For the foregoing reasons this case is reversed and remanded to the Circuit Court of St. Clair County for a new trial.

Reversed and remanded.

CREBS, J., concurs.

Mr. JUSTICE JONES dissenting:

In their opinion the majority reason that the State would not have had an opportunity to take statements from the alibi witnesses except for the defendant's drastic and fundamental "concession." They say, and it is true enough, that in *Williams* the Supreme Court of the United States held that such a fundamental "concession" was only valid if liberal reciprocal discovery is available to the defendant. The syllogism closes with, "Surely that discovery extends at least to statements which are in the State's possession only because of and as a direct result of the disclosure of the defendant * * * (and) the mandate of *Williams* for liberal reciprocal discovery is clear." It is with this conclusion that I am in disagreement and therefore respectfully dissent.

I believe the majority opinion represents a misapplication and misinterpretation of *Williams v. Florida,* that it is contrary to a statutory directive of the Illinois legislature and constitutes an unwarranted assumption of rule making power by an appellate court.

The trial in this case was concluded on May 20, 1970. The opinion in the *Williams* case was filed over one month later on June 22, 1970. But

notwithstanding the hiatus in time the majority expressly based their reversal upon the *Williams* case without even discussing its retroactive application. Yet, a few paragraphs later in their opinion they decline to apply a companion discovery rule permitting the taking and use of evidence depositions because of its non-retroactive application. Clearly the discovery process involved here is a procedural matter and retroactive application seems totally unwarranted especially when it is considered that such sacrosanct criminal procedure rulings as those involved in *Mapp v. Ohio,* 367 U.S. 643, 6 L.Ed.2d 1081, 81 S.Ct. 1684; *Escobedo v. Illinois,* 378 U.S. 478, 12 L.Ed.2d 977, 84 S.Ct. 1758; *Griffin v. California,* 380 U.S. 609, 14 L.Ed.2d 106, 85 S.Ct. 1229, and *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 were held to have prospective application only. (See *People v. Williams,* 44 Ill.2d 334, 255 N.E.2d 385.) The State was taken to task for its failure to adhere to non-existent rules. But, in fact, the State, in declining to furnish copies of statements taken from defendant's alibi witnesses, and the trial court in sustaining the position, were following the law applicable at the time of trial, viz., statements of witnesses (other than the defendant himself) were not discoverable at the pretrial stage, but where the relevance and competence of a statement or report was established, the trial judge should order the document delivered directly to the accused for his inspection and use for impeachment purposes. *People v. Cagle,* 41 Ill.2d 528, 244 N.E.2d 200; *People v. Neiman,* 30 Ill.2d 393, 197 N.E.2d 8; *People v. Wolff,* 19 Ill.2d 318, 167 N.E.2d 197.

The question of retroactive application aside, I believe the majority to have misinterpreted the holding in *Williams v. Florida.* It is not authority for, and does not require, the result reached by the majority. The opinion pointedly omits to mention the fact that in the *Williams* case the State had taken a statement from defendant's alibi witness and used it at the trial for impeachment purposes. The facts present in *Williams* and the case under consideration are in many respects similar, particularly in that in both cases defendant was required by statute to furnish the State the names of his alibi witnesses, and the State proceeded to take statements or depositions from such witnesses and later used them at the trial. In neither case was pretrial discovery of the statements granted to the defendant. In *Williams* the alibi witness was impeached upon cross-examination by use of the statement and in this case defendant (so it is argued) was prevented from calling one alibi witness because of the existence of the undisclosed statement which rendered defendant uncertain as to the reliability of his witness.

The court in *Williams* stated that they need not linger over the sug-

gestion that the discovery (of the names of alibi witnesses) permitted the State against petitioner deprived him of "due process" or a "fair trial." The reason was that the Florida statute provided for liberal discovery by the defendant against the State and the notice-of-alibi is hedged with reciprocal duties requiring State disclosure to the defendant. The reciprocal duty imposed upon the State by the statute was that in exchange for defendant's alibi witnesses the State was required to furnish defendant the names of witnesses it would use in presenting rebuttal evidence to defendant's alibi. Thus, in *Williams* the existence of statements taken from defendant's alibi witnesses was in noway involved in the court's concern for reciprocity. In fact, majority approval of the use of undisclosed statements is indicated by the presence in the opinion of the following language:

> "* * * armed with Mrs. Scotty's (the alibi witness) name and address and the knowledge that she was to be petitioner's alibi witness, the State was able to take her deposition in advance of trial and to find rebuttal testimony."

Later the *Williams* majority stated:

> "Nor would there be self-incrimination problems if, during that continuance, the State was permitted to do precisely what it did here prior to trial: take the deposition of the witness and find rebuttal evidence."

It is thus seen that the *Williams* case, stated by the majority to compel the result they reach, in fact sanctions that which the majority says it condemns. This conclusion is buttressed by the significant fact that in the Federal court system there is no pretrial discovery of statements of either government or defense witnesses. Not only do the Federal Rules of Criminal Procedure not provide for such pretrial discovery of witness statements, they expressly exclude them. (Federal Rules of Criminal Procedure, 18 U.S.C.A., Rule 16(b).)

Impliedly conceding that the *Williams* case does not "require" the conclusion they reach, the majority seek justification and support by adverting to other authorities. If the *Williams* case is the imperative claimed (which it is not) then one must concede that they were correct in extending and enlarging the criminal discovery rules adopted by our supreme court. But if the majority opinion is to be based on extra-*Williams* authority then clearly it is without authority or precedent and contrary to a governing statute. In 1964 the Illinois legislature provided in Ill. Rev. Stat., ch. 38, sec. 114—13 that: "Discovery procedures in criminal cases shall be in accordance with Supreme Court rules." The majority opinion is in direct conflict with that statute.

The majority rely upon the "rationale" of the case of *People v. Crawford* and certain provisions of the U.S. Constitution as justification for their result. But these are not such authorities.

The Fourth District Appellate Court in deciding *People v. Crawford* expressly state that they were without authority to adopt rules of discovery, a statement apparently overlooked by the majority here. The Fourth District found an inherent power in the trial court to adopt criminal discovery rules when the State possesses information that would substantially affect or be of substantial benefit to a proper defense by a defendant.

The Illinois Supreme Court granted the State leave to appeal in *Crawford* and appointed the "Supreme Court Committee on Discovery in Criminal Cases" to draft criminal discovery rules. The result was Supreme Court Rules 411 through 415, providing for discovery in criminal cases. Subsequent to the adoption of the rules the *Crawford* case was remanded without opinion to the circuit court with directions to proceed in accordance with the rules. The directive to the trial court to proceed with discovery in accordance with the rules was a clear limitation upon the "inherent power" of the trial court to develop discovery rules. The objections to such "inherent power" present in the *Crawford* case are equally present here and equally applicable to an Appellate Court. If an appellate court may adopt rules for criminal discovery an orderly process would be totally lacking and result in a hodgepodge of case-developed rules in each of the five appellate districts. For instance, as it now stands, discovery in criminal cases in Illinois is governed by Supreme Court Rules 411 through 415 and the majority opinion in this case. What further nuances to the supreme court's criminal discovery rules will be spawned by the action of the majority here?

In further justification of their position the majority cite the sixth amendment and the due process clause of the United States Constitution. Curiously they do not state that the result they reach is constitutionally required but seemingly insert those citations as though the only reason their criminal discovery rule was not included was an oversight by the founding fathers. Pretrial discovery in criminal cases never has been held to be constitutionally required. The majority incorporate a segment of an article appearing in 50 N.C.L. Rev. in which the author argues that several constitutional provisions are "well adapted" to the imposition of constitutional standards for criminal discovery, but despite the professorial argument the constitution has not been so invoked. That pretrial criminal discovery is not constitutionally required is also shown by the fact that the Federal Rules still specifically exclude it, as above stated.

Even following the promulgation of the American Bar Association Standards Relating to Discovery and Procedure Before Trial there remains a great disparity of opinion as to whether statements of witnesses of either the prosecution or defendant should be disclosed to the opposite party in pretrial discovery. (See the commentary which accompanies the A.B.A. Standards.) The American Bar Association Standards nowhere provide that a party to a criminal case should be entitled to pretrial discovery of statements of its own witnesses. To hold, as the majority does here, that a party is entitled to pretrial discovery of statements taken from his own witnesses is totally unprecedented and unwarranted.

The majority find certain comments by the prosecutor in his final argument to be improper. The defendant did not raise the question of the impropriety of final argument as one of his points on appeal.

I would affirm the verdict and judgment.