THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSE BARRERA, Defendant-Appellant.

First District (2nd Division) No. 62627

Opinion filed October 26, 1976.

Rick Halprin, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Joan S. Cherry, and Edward H. Phillips, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant, Jose Barrera, was charged by indictment with the offense of murder in violation of section 9—1 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 9—1). Upon a bench trial defendant was found to be guilty as charged, judgment was entered on the finding and defendant was sentenced to a term of confinement of 20-40 years to be served in the Illinois State Penitentiary.

Defendant initially sought direct appeal of his conviction and to this end the cause was docketed in the appellate court. While this case was pending defendant filed a petition for relief under the Illinois Post-Conviction Hearing Act (Ill. Rev. Stat. 1971, ch. 38, par. 122—1 *et seq.*) contending that his conviction was secured in violation of his constitutional right to due process of law. Defendant having failed to pursue the direct appeal, it was dismissed for want of prosecution on November 16, 1973. Prior to the appellate court's dismissal order of that date, defendant's post-conviction petition was heard and dismissed. From this ruling defendant currently appeals.

The evidence at the trial was as follows:

Sevastiana Garcia, widow of the deceased, testified that between the hours of 7 and 7:30 p.m. on January 9, 1971, she and her husband, Agapito S. Garcia, left their South Chicago restaurant and walked four blocks to their home at 8714 S. Buffalo Avenue. A man identified as defendant, and some of his friends, had been standing outside of the Garcia's restaurant and followed Garcia and his wife to their home. As they entered the building two persons ran across the street towards them. One of the men seized Garcia and the other shot him to death.

The two assailants, wearing long coats, caps, and scarves over their faces, fled. While escaping, the scarf concealing the identity of one of the assailants slipped down, exposing his face. Aided by the electrical lighting emanating from the vestibule of her home, she identified this individual as defendant. She also indicated that she had known defendant for a period of five months and during that time had observed him in the restaurant as often as three times a day. On one such occasion, she testified that defendant and her husband had argued and that defendant drew a gun and had threatened the deceased.

Defendant testified in his own behalf and asserted that he had been at

Russell Square Park, at 83rd and South Shore Drive, for most of the day in question. Specifically, defendant indicated that he was at the park continuously from 5:15 p.m. to 8:30 p.m.

Defendant also adduced the testimony of various witnesses who testified that they were in his company at the times in question. Jose Gonzalez and Richard Alvarez testified that defendant was in the park between 4:45 and 8:30 p.m., and Benito Lopez and Domingo Jiminez testified that defendant was at the park continuously from 7:30 to 8 p.m. On cross-examination Gonzalez and Lopez were impeached by use of their prior statements made under oath at defendant's bond hearing. All the alibi witnesses were also impeached on the basis of unsworn statements made when interviewed by police investigators prior to trial.

Defendant's argument focuses on the propriety of the latter impeachment within the context of certain discovery procedures employed in the case at bar, the cumulative effect of which defendant contends warrants reversal of his conviction. Specifically, defendant asserts that he was compelled to furnish the State with notice and a list of alibi witnesses pursuant to the alibi-defense statute. (Ill. Rev. Stat. 1971, ch. 38, par. 114—14.) As a result of having been provided with said list of witnesses the prosecution caused to be transcribed various interviews with these individuals. During the course of pretrial discovery, defendant requested and secured orders compelling the State to furnish, prior to trial, evidence which would have been of assistance to defendant in the preparation of his defense. The State's Attorney was in possession of these transcripts prior to trial but did not provide defense counsel with copies of the transcripts until each defense witness was called to testify at trial. On cross-examination the prosecution made extensive use of these statements in conjunction with testimony adduced at defendant's bond hearing to impeach the various defense witnesses.

Defendant does not complain that he was denied due process of law merely by the application of the alibi-defense statute to the pretrial discovery procedures of the instant case. He correctly points out that such a claim would be one in which the defendant was under a unilateral obligation to provide certain information to the State while the State was without reciprocal obligation to him. (*Wardius v. Oregon* (1973), 412 U.S. 470, 37 L. Ed. 2d 82, 93 S. Ct. 2208; *People v. Fields* (1974), 59 Ill. 2d 516, 322 N.E.2d 33.) Defendant concedes that he enjoyed the right to reciprocal discovery under the rules of discovery in effect at the time of his trial and wholly absent in *Wardius* and *Fields*. Defendant does, however, maintain that the prosecution improperly failed to comply with the discovery orders, that such misconduct operated to his substantial prejudice and that the error which was thereby injected was of

constitutional magnitude so as to render the matter amenable to collateral attack.

We note at the outset that defendant failed to raise the issues presented herein either at trial or on direct appeal, choosing instead to raise these matters initially by means of post-conviction petition. We shall consider the questions presented as plain error. *People v. Sarelli* (1973), 55 Ill. 2d 169, 302 N.E.2d 317.

The State offers no explanation for its refusal to provide defendant with the aforementioned transcripts prior to trial. Neither party directs the court's attention to any cases on point. The issue is apparently one of limited precedent and our own review of the case law leads to the opinion of the appellate court in *People v. Fields* (1973), 12 Ill. App. 3d 608, 298 N.E.2d 743. That opinion held that where defendant was compelled by statute to disclose the names of alibi witnesses and the prosecution interviewed such witnesses and took written statements, defendant was entitled under the rules of discovery and notions of fundamental fairness, upon proper request, to be provided with copies of the interviews prior to trial to assist in the preparation of his defense. The Illinois Supreme Court, in reversing the defendant's conviction on the ground that the alibi-defense statute was unconstitutional, expressly chose not to reach the question posed in the case at bar. (*People v. Fields* (1974), 59 Ill. 2d 516, 322 N.E.2d 33.) The appellate court's consideration of the matter, however, is extensive and persuasive.

It remains to be considered, however, whether the prosecution's failure to comply with the discovery orders in timely fashion substantially prejudiced defendant or whether the error injected into the record was harmless beyond a reasonable doubt. (*People v. Lucien* (1975), 34 Ill. App. 3d 161, 340 N.E.2d 65.) We conclude that this error, given the strength of the evidence marshalled against him, does not mandate reversal of defendant's conviction.

The testimony of Sevastiana Garcia was consistent and credible. Her familiarity with defendant prior to the date of the assault is well established by the record and her opportunity to observe him on that night was adequate.

For the aforementioned reasons the judgment of the circuit court in dismissing defendant's petition for post-conviction relief is affirmed.

Affirmed.

DOWNING and JIGANTI, JJ., concur.