THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DOROTHY WARD *et al.*, Defendants-Appellants.

(No. 56709;

First District (5th Division)—July 27, 1973.

James J. Doherty, Public Defender, of Chicago, (Emanuel Logalos and James N. Gramenos, Assistant Public Defenders, of counsel,) for appellants.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane and Patricia C. Bobb, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendants Dorothy Ward (alias Josephine Reed) and Rosemary Brown were found guilty of armed robbery after a bench trial. Following a hearing in aggravation and mitigation, they were sentenced to three to six years. Defendants then appealed to the Supreme Court which transferred the case here.

Both defendants make the following contentions on appeal: the pretrial identification procedures violated their due process rights; and the trial court's refusal to allow discovery in regard to a police officer's notes of an interview with the complaining witness, and in regard to certain police radio logs, was reversible error. Defendant Ward alone contends that the trial court's refusal to furnish her with funds to hire an expert witness to dispute the authenticity of her signature on a waiver of rights form was reversible error. Defendant Brown alone contends that the

trial judge erred in ruling that her counsel's request for a list of witnesses and statements tolls the 120 day speedy trial rule.

Evidence.

Defendants were indicted March 12, 1970, for the armed robbery of a Chicago gas station on December 23, 1969. They had been arrested and incarcerated on December 28, 1969. On March 20, 1970, at arraignment, the Public Defender was appointed to represent defendants and orally moved for discovery of the State's list of witnesses and "any written confessions or oral admissions that they may have made." The State requested a week to ten days to comply. The court continued the case until April 8, 1970, and stated, "Motion defendant." On April 8, 1970, the State filed a written list of witnesses and a list of physical evidence. On May 15, 1970, defendant Brown filed a petition for discharge, alleging that 120 days had passed since December 28, 1969, the date she was placed in custody. The discharge was denied after a hearing. Then defendant Ward made a motion for a handwriting expert to determine the authenticity of her signature on a confession and waiver of rights. After several hearings the motion was denied. Defendants then filed a motion to suppress the identification testimony of all witnesses, which was denied.

Finally, defendants filed a motion to suppress evidence and dismiss indictments. At the hearing on the motion, defendant Ward, testifying on behalf of herself, and Officer Thomas O'Farrell testifying on behalf of the State, both stated that defendants were not violating any law when they were arrested. O'Farrell, a member of the Alsip Police Department, was on duty at approximately 5:00 A.M. on December 28, 1969, when he received a radio communication that a Clark gas station was to be robbed. The officer testified that on December 21, 22, and 24, 1969, he had received dispatches over his police radio that gas stations in nearby suburbs had been robbed. The dispatches in each instance reported that the vehicle involved was a white over gray, 1962 Buick, bearing a certain Illinois license plate number. Proceeding to a Clark station at 3600 West on 127th Street, Officer O'Farrell observed a white over gray, 1962 Buick with the same license plate mentioned in the previous radio dispatches. He radioed his partner, Officer Orlovetz, who immediately joined in following the car. The two officers stopped the car, asked the two occupants (identified in court by the witness as defendants) to get out, informed them that they were being held for investigation of armed robbery, and informed them that they had a right to remain silent. Officer O'Farrell observed a revolver lying in the front seat and a black automatic pistol between the seat and the door, and confiscated both.

The trial began on June 18, 1970, with Henry March, the complaining

witness, testifying that he was working at a gas station on Chicago's south side when a 1962 Pontiac pulled into the station. After servicing the car, March went inside the station. One of the occupants in the car then pulled out a gun and ordered March to give her all his money. She then waved to her companion, who came inside and together the two searched the drawers and shelves, taking cash and cartons of cigarettes. At trial March identified defendants Ward and Brown as being the two persons involved in the robbery.

March further testified that on March 30, 1969, Detective Adams phoned March at work, told him a couple of girls had been arrested for robbery in a suburb, and that they fit the description he had given police. Detective Toles visited March at work, showing him seven photographs. One of the pictures showed a front view of defendant Ward with the words "Police Department, Alsip, Illinois" written underneath her chin. This picture and a second one, a side view of Ward, comprised People's Exhibit No. 2. The third photograph presented a front view of defendant Brown with the identical caption underneath her chin. This shot along with a side view of Brown formed People's Exhibit No. 3. The remaining three photographs were of three different women.

Just prior to the Grand Jury hearing, Detective Toles was showing the photographs to a friend. Standing very near the detective, March saw the pictures easily and overheard Detective Toles mention the names of defendants as he pointed to each picture. While March was speaking to the State's Attorney's stenographer after the hearing, he was again shown the photographs.

During direct examination, the prosecutor showed March People's Exhibit No. 2, telling him that it purports to be a picture of defendant Ward. The defense attorney objected to this form of questioning. March then testified that during his meeting with Detective Toles, March had identified the person pictured as a participant in the robbery. After being shown People's Exhibit No. 3, March testified that he had also identified the person pictured, defendant Brown, as a participant in the robbery at the same meeting. The defense attorney objected to all testimony regarding the identification. March also testified that the words "tall" on People's Exhibit No. 2 and "short" on People's Exhibit No. 3 were not on the pictures when they were first presented to him during his meeting with Detective Toles.

During cross-examination, March testified that he spoke to several police officers immediately after the robbery and that he noticed one of them taking notes. Defense counsel then requested that the notes be turned over to him. The trial judge denied the request on the grounds that discovery of private notes is not mandatory. Defendants chose not

to put forward a defense. Both were convicted of armed robbery and took this appeal.

Opinion.

Defendants were arrested on December 28, 1969, and remained incarcerated without being admitted to bail. On May 15, 1970, defendant Brown filed a petition for discharge pursuant to Ill. Rev. Stat. 1969, ch. 38, sec. 103—5,[1] alleging that more than 120 days had passed since her arrest and that she had not yet been brought to trial. Clearly, therefore, defendant Brown was entitled to discharge unless she occasioned or caused the delay of trial. Defendants' attorney concedes that defendant Ward is not entitled to discharge since she filed a motion for continuance on April 8, 1970, and therefore clearly occasioned the delay of trial. The State contends that Brown did occasion a delay in the trial on March 20, 1969, by reason of her attorney's requesting a list of witnesses and notice of their statements, which tolled the running of the four-month statutory period and caused it to run anew from that date. If this is so, trial on June 18, 1970, was in apt time. (The time between the May 15 petition for discharge, and June 18 were consumed mostly by hearings on defendants' motion to suppress evidence, motion for appointment of a handwriting expert, etc.)

In *People v. Nunnery* (1973), 54 Ill.2d 372, the trial was delayed beyond the 120 day limit by reason of defendant's filing a complex motion for discovery. Nunnery was arrested on February 9, 1969, and indicted on May 27, 1969. He was arraigned on June 4, 1969, at which time he filed a 21 paragraph motion for discovery. On June 12, 1969, he moved for a discharge. The trial court allowed the petition and he was discharged. The Appellate Court held that although the delay in the indictment and arraignment could not be attributed to defendant, his filing of the discovery motion on the 115th day started a new 120 day period. On further appeal defendant contended (in the language of the Supreme Court opinion) that the Appellate Court's decision forced him to elect between his constitutional right to a speedy trial and his right to pre-trial discovery, thus depriving him of due process of law; that the record shows that defendant's motion did not cause any delay, and that the decision served to create an invidious classification of defendant based on wealth, and denied him equal protection of the law. The Supreme Court held that since the requested information could have been produced promptly by the State if it had been ready for trial as it asserted

---

[1] § 103—5 provides in part:
"(a) Every person in custody of this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by defendant."

it was, no delay was caused by the defendant, and he was entitled to a discharge.

■■ In this case, we believe *Nunnery* applies in regard to defendant Brown. Defendant's motion for a list of witnesses and statements was not the type of motion which would occasion delay which could justly be attributed to defendant upon viewing the case as a whole. Here, 82 days after the arrest, the State could have supplied the requested information relatively easily. (See *People v. Scott* No. 55782, filed July 19, 1973.) We recognize that courts must be careful to prevent a mockery of justice by technical evasion or by improper discharge under the 120 day rule. (*People v. Fosdick* (1967), 36 Ill.2d 524, 528-529, 224 N.E.2d 242, 246.) In this regard, of course, we note that defendants must not be permitted to manipulate rights intended for their protection in such a way as to provide an avenue to escape legitimate prosecution, to avoid the necessary and proper consequences of illegal acts, and to injure society as a whole. (*People v. Hairston* (1970), 46 Ill.2d 348, 263 N.E.2d 840.) We further recognize that the trial courts must determine these matters in the first instance and must, therefore, be accorded some degree of discretion. However, in this particular case, for the reasons we have indicated, judgment as to defendant Brown must be reversed. Therefore, we will confine the remainder of our discussion to those matters affecting defendant Ward.

Defendant Ward's first contention is that the trial court erred in denying her motion to suppress identification testimony. A favorable ruling on this motion would have precluded the following testimony which was successfully elicited at her trial: (1) testimony concerning March's identification of defendant Ward's photographs on December 30, 1969, and (2) March's in-court identification of Ward. Defendant Ward argues that each of these identifications was induced or tainted by suggestive and improper police procedures, and that to allow testimony regarding each of them was to violate her Fourteenth Amendment right to due process.

■■ A defendant is free to establish, based on the totality of the circumstances, that the identification of the accused was so lacking in fairness as to deprive him of due process. (*Stovall v. Denno* (1967), 388 U.S. 293.) We agree with defendant that the police procedures used in the case at bar were improper. The use of duplicate photos of each defendant, the marking of the words "Police Department, Alsip, Illinois" on the front view photos of each defendant, and the addition of the words "tall" on the photos of Ward and "short" on the photos of Brown are not procedures condoned by this court. Similarly, the use of a

line-up would have been preferable, as the court noted in *People v. Holiday* (1970), 47 Ill.2d 300, 265 N.E.2d 634.

■■ The court in *People v. McMath* (1968), 104 Ill.App.2d 302, 313, 244 N.E.2d 330, 335; affirmed (1970), 45 Ill.2d 33, 256 N.E.2d 835, stated:

> "If, however, the testimony does establish an unfair pretrial identification confrontation, the subsequent in-court identification may nevertheless be admissible if the State shows, by clear and convincing evidence, that such in-court identification has an independent origin, arising from other uninfluenced observation of the defendant."

(See also *People v. Fox* (1971), 48 Ill.2d 239, 269 N.E.2d 720.) Applying the *McMath* and *Fox* rulings to the case at bar, we find that March's in-court identification had an origin independent of the improper police and prosecutorial conduct. It was undisputed that the floodlights and spotlights the station were shining brightly during the entire time the robbery took place. The lights inside the station were on. March observed defendant Ward at a very close distance over the course of 10-15 minutes. She was not wearing a disguise of any sort. March was cross-examined extensively and remained positive and uncontradicted in his testimony regarding the identification. The mere absence of a line-up does not render the identification violative of due process. The positive identification of an accused by one who closely observed him at the time of the crime is not discredited by the lack of a police line-up. (*People v. Starling* (1971), 131 Ill.App.2d 806, 266 N.E.2d 905.) We hold that since the in-court identification was based on circumstances sufficiently independent of the improper police and prosecutorial procedures, defendant Ward was not deprived of her due process rights.

Ward next contends that the trial court committed reversible error in ruling that a police officer's notes taken at the original interview of March need not be turned over to the defense for purposes of impeachment. The Illinois Supreme Court in *People v. Wolff* (1960), 19 Ill.2d 318, 327, 167 N.E.2d 197, 201-202, expressly adopted the Federal rule first announced in *Jencks v. United States* (1957), 353 U.S. 657, and later made part of a Federal statute (18 U.S.C., sec. 3500):

> "Accordingly, we adopt the view that where no privilege exists, and where the relevancy and competency of a statement or report has been established, the trial judge shall order the document delivered directly to the accused for his inspection and use for impeachment purposes. However, if the prosecution claims that any document ordered to be produced contains matter which

does not relate to the testimony of the witness sought to be impeached, the trial judge will inspect the document and may, at his discretion, delete unrelated matters before delivery is made to the accused."

■■ The case of *People v. Dennis* (1970), 47 Ill.2d 120, 265 N.E.2d 385, with facts identical to the case at bar, demands that we reject defendant's argument. In *Dennis*, the complaining witness testified that he had spoken to the police after the crime, but could not testify as to the contents of the notes being taken by the police. The State denied that the report contained statements of the witness. Similarly, in the case at bar, March could not testify as to the contents of the notes taken by the police, and the State has continually denied that the notes contain any statement by March. The record discloses that the State filed a list of evidence in which it denied possessing any witness' statement. Therefore, we follow the court in *Dennis* (1970), 47 Ill.2d 120, 129, 265 N.E.2d 385, 390 in holding that:

"In this regard, the defense could have requested the court to conduct a hearing outside the presence of the jury for the purpose of securing the testimony of the officer who made the report. Having failed to establish that the report contained a statement of the complaining witness in his own words or substantially verbatim, defendant was not entitled to its production."

Ward next contends that the trial court's granting the State's motion to quash the subpoena duces tecum for the production of the police radio logs, from which the message giving the police probable cause to arrest defendants came, was reversible error. We need not decide whether the subpoena was properly quashed because the record shows beyond a reasonable doubt that even if it were error to have quashed the subpoena, the error was harmless. (*Gilbert v. California* (1967), 388 U.S. 263; *Chapman v. California* (1966), 386 U.S. 18.) In upholding the trial court's decision to deny the suppression of certain evidence, the Illinois Supreme Court in *People v. Kirkwood* (1973), 54 Ill.2d 369, found that none of the evidence seized led to the identification of Kirkwood. Instead the positive and unequivocal identification of Kirkwood was sufficient to support his conviction. Under *Kirkwood* identification of this defendant by March was sufficient to support the conviction. We find no reversible error.

Defendant Ward finally contends that the trial court committed reversible error in not allowing her requested funds to procure an expert to dispute the authenticity of her signature on a waiver of rights and confession, and that the court wrongly relied on personal beliefs in deciding the issue. Defendant was not prejudiced even if the court wrong-

fully refused to allow funds for an expert, or wrongfully relied on personal beliefs, since defendant could not point to any and we could find no confession, written or oral, introduced into evidence or in any way referred to by any witness. Therefore, without deciding the legal issue raised, we find that defendant's contention is wholly without merit.

For the reasons stated the judgment as to defendant Brown is reversed, and the judgment as to defendant Ward is affirmed.

Reversed in part, affirmed in part.

DRUCKER, P. J., and ENGLISH, J., concur.