(No. 46109.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. KENNETH FIELDS, Appellee.

*Opinion filed November 27, 1974.—Modified on denial of rehearing*
*January 30, 1975.*

William J. Scott, Attorney General, of Springfield, and Robert H. Rice, State's Attorney, of Belleville (James B. Zagel and John F. Podliska, Assistant Attorneys General, both of Chicago, and Clyde Kuehn, Assistant State's Attorney, of counsel), for the People.

Paul Bradley, First Deputy Defender, Office of State Appellate Defender, of Chicago, and Howard B. Augustus, Assistant Appellate Defender, for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

The defendant, Kenneth Fields, was convicted of armed robbery (Ill. Rev. Stat. 1969, ch. 38, par. 18—2) in the circuit court of St. Clair County and was sentenced to serve not less than 15 nor more than 20 years in the penitentiary. The appellate court, with one judge dissenting, reversed his conviction (12 Ill. App. 3d 608), and we granted the People's petition for leave to appeal.

On December 30, 1968, Fred Halvachs, a liquor salesman, made a business call at the Archway Lounge in East St. Louis at about 2:15 p.m. He was talking with the owner, John Coates, when three men and a woman entered the tavern. One of the men put a shotgun in Halvachs's ribs and the woman took his wrist watch, eyeglasses, brief case and a wallet containing $400. The woman also took

Coates's wallet with an undisclosed amount of money.

Officer John Sengheiser of the St. Louis Police Department testified at the defendant's trial that on December 30, 1968, at about 2:45 p.m. he was stopped at a traffic signal at the intersection of Florissant and North Market Streets in St. Louis. A 1967 Buick automobile with three men passed in front of him. He said all three turned and stared at him, which made him suspicious. The defendant, he said, was seated in the front seat on the passenger side. He compared the license number of the Buick with a "department hot sheet" bearing the license numbers of stolen vehicles and observed that the Buick had been reported stolen. He pursued the car until it turned into an alley and the three men abandoned the auto and fled on foot. The witness returned to his car and about 2½ blocks away and five minutes later saw the defendant and another man on a street corner and placed them under arrest for auto theft. He recognized the other man as also having been in the stolen auto. The defendant at the time of his arrest had on a green, sweater-like shirt, green trousers and a green hat and was wearing a brown overcoat. He was breathing heavily, as if he were out of breath. When Officer Sengheiser returned to the abandoned car, he testified, he found Fred Halvachs's brief case on the back seat. At the police station he searched the defendant and found in a trouser pocket a pen case belonging to Halvachs.

Fred Halvachs testified that he did not see the faces of any of the robbers and could not identify any of them.

John Coates testified that the defendant was one of the robbers and was the one who had a sawed-off shotgun. He said the defendant was wearing a green hat, a green, sweater-like shirt, and green pants and an overcoat of a color he could not remember. He testified that he saw and identified the defendant the following day in a police lineup in St. Louis and later in court at an extradition proceeding. When cross-examined as to the lighting in the

lounge at the time of the robbery Coates said that while the lighting was not as good as the lighting in the courtroom it was "lighter than most lounges" and "was good enough" for him to see the defendant. He said the defendant, following the robbery, took time to dismantle the sawed-off shotgun before he left the lounge.

Defendant testified that he was at his home in St. Louis during the early afternoon on the day of the robbery and that he went out at about 2:30 p.m. to visit a friend. He said that he had walked three blocks when he met Ronald Prince at the corner of 20th Street and St. Louis Avenue. He said that they stood there only a few minutes when Officer Sengheiser arrested them. Defendant testified he had five dollars on him when he was arrested.

Defendant's wife, Pauletta Fields, and Dorothy Brenkley, a neighbor, testified that the defendant was at home during the early afternoon and had gone out about 2:30 p.m. on December 30, 1968.

Prior to trial, the prosecutor filed a motion to produce under the alibi defense statute (Ill. Rev. Stat. 1969, ch. 38, par. 114—14), which requires a defendant intending to rely on an alibi defense to provide specific information no later than five days before trial as to the place that he maintains he was at the time in question and the names and addresses of witnesses he intends to call to establish his alibi defense. The defendant filed a list naming five persons he said he planned to call to establish an alibi. At the close of the State's case he made a motion for the production of any statements the State had taken from his alibi witnesses, but the trial court denied the motion. The appellate court held that this was error and reversed the conviction.

The People here argue that an accused does not have a right to obtain from the prosecution statements his alibi witnesses may have given the prosecutor. We do not reach this question, because under *Wardius v. Oregon* (1973), 412 U.S. 470, we must hold our alibi statute to be unconstitutional.

In *Williams v. Florida* (1970), 399 U.S. 78, 26 L. Ed. 2d 446, 90 S. Ct. 1893, the Supreme Court of the United States upheld the constitutionality of Florida's notice-of-alibi statute, which required a defendant intending to rely on an alibi defense to notify the prosecution of the time and the place he claimed to have been, and of the names and addresses of persons he intended to call as witnesses in support of his alibi defense. The court noted, however, that the constitutionality of such a statute might depend on "whether the defendant enjoys reciprocal discovery against the State." 399 U.S 78, 82 n.11, 26 L. Ed. 2d 446, 450 n.11, 90 S. Ct. 1893.

Later in *Wardius v. Oregon* (1973), 412 U.S. 470, 37 L. Ed. 2d 82, 93 S. Ct. 2208, the court held unconstitutional an Oregon notice-of-alibi statute which precluded a defendant from introducing evidence to support an alibi if he had failed to comply with the notice requirements of the statute.

In part the court said: "The *Williams* Court was therefore careful to note that 'Florida law provides for liberal discovery by the defendant against the State, and the notice-of-alibi rule is itself carefully hedged with reciprocal duties requiring state disclosure to the defendant.' [Citation.] The same cannot be said of Oregon law. *** Oregon grants no discovery rights to criminal defendants ***. More significantly, Oregon, unlike Florida, has no provision which requires the State to reveal the names and addresses of witnesses it plans to use to refute an alibi defense. ***. [D]iscovery must be a two-way street. The State may not insist that trials be run as a 'search for truth' so far as defense witnesses are concerned, while maintaining 'poker game' secrecy for its own witnesses. It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State." (412 U.S. 470, 474-476, 37 L. Ed. 2d 82, 87-88, 93 S. Ct.

2208.) The court concluded: "Thus, in the absence of fair notice that he would have an opportunity to discover the State's rebuttal witnesses, petitioner cannot be compelled to reveal his alibi defense." 412 U.S. 470, 479, 37 L. Ed. 2d 82, 90, 93 S. Ct. 2208.

Our alibi-defense statute (Ill. Rev. Stat. 1969, ch. 38, par. 114–14) must be considered to deny due process in the light of what the Supreme Court said in *Wardius*. Our statute, which requires an accused to notify the prosecution of the proposed defense, does not provide for discovery of the prosecution's alibi-rebuttal witnesses. Too, the statute which requires that the prosecution furnish the defense with a list of prosecution witnesses expressly provides that this requirement does not extend to rebuttal witnesses. Ill. Rev. Stat. 1969, ch. 38, par. 114–9(c); *People v. Holliday*, 47 Ill.2d 300, 303-304.

Our conclusion that the alibi-defense statute is unconstitutional does not, however, require a reversal of the defendant's conviction. The evidence, including the testimony of John Coates and Officer Sengheiser and the finding of Fred Halvachs's pen case in the defendant's pocket, pointed overwhelmingly to guilt. We can therefore declare that requiring the defendant, under a statute we find to be unconstitutional, to notify the prosecution of his alibi defense and witnesses was error that was harmless beyond a reasonable doubt. (*Harrington v. California* (1969), 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726; *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) We would add that it is clear that the defendant was not harmed by the denial of his motion for the production of the statements taken from the alibi witnesses. The statements were used in their cross-examination without any significant effect and their use could not have affected the trial's result.

The defendant's additional claim that there was improper final argument by the prosecutor does not provide a ground here for disturbing the conviction. The

evidence of the defendant's guilt was completely persuading, and as this court held in *People v. Berry,* 18 Ill.2d 453, 458: "Where it appears that improper remarks do not constitute a material factor in the conviction \*\*\* the verdict will not be disturbed."

There were other contentions made by the defendant in the appellate court which it was not necessary for that court, under the disposition it made, to consider. We have examined the contentions and find them to be without merit.

For reasons given, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*