THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES SMITH, Defendant-Appellant.

(No. 58042;

First District (3rd Division)—September 18, 1975.

Paul Bradley and Brenda E. Richey, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Raymond J. Prosser, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

Defendant, Charles Smith, was indicted for the offense of murder. After a trial by jury at which he was found guilty of the crime, de-

fendant was sentenced by the circuit court of Cook County to 40 to 100 years' imprisonment. Defendant argues on appeal that the State failed to prove his guilt beyond a reasonable doubt, the court erred in failing to suppress the improper identification testimony, the court erred in allowing the State to exceed the proper scope of rebuttal testimony, and that defendant was denied due process of law because of the application of the unconstitutional notice of alibi defense statute.

We affirm.

The record reveals the following pertinent facts. At about 1:30 a.m. on June 9, 1971, Clarence Stovall was murdered. Two bullets struck his body at that time; the bullet fired through his heart was the cause of death. The victim's next door neighbor heard loud noises through the wall and looked out his door to see two men leaving Stovall's apartment and walk down the hallway. The neighbor later identified defendant, Charles Smith, as one of the two men he saw, and so testified at trial.

The State's witnesses testified that Stovall was a leader of a street gang which had entered into a truce with a rival organization. Smith entered the neighborhood and attempted to usurp Stovall's position by fomenting hatred for the rival gang. At about 7:30 on the evening of June 7, Smith told Stovall to kill three members of the rival gang, but Stovall refused. Smith then pulled a pistol, pointed it at Stovall, and pulled the trigger. The pistol did not go off. Smith struck Stovall in the head with the pistol, and then, according to the prosecution witnesses, said, "Don't forget what I said. I will be back. Burn three or else I'll burn you tomorrow when I come around." Stovall did not murder any rival gang members. Thirty hours after the threat, Stovall was dead at the hand of a person identified as Charles Smith.

Defendant testified in his own behalf that he has never owned or carried a gun, and that he was not a gang member at the time of the incident. Defendant also testified that Stovall was his friend and that Stovall was afraid of the rival gang because of prior unsuccessful assassination attempts. Defendant presented an alibi defense.

The first contention on appeal is that the State's circumstantial evidence was insufficient to prove defendant guilty beyond a reasonable doubt. Defendant points especially to inconsistencies in the testimony of the next-door neighbor and the three men who testified concerning the June 7 altercation between Smith and Stovall. In his favor, defendant argues that his defense of alibi was well proven. We shall briefly examine the testimony relevant to defendant's allegations.

The next door neighbor called the police after he heard shots in Stovall's apartment and went to see what the trouble was. He told the responding officers that he saw two men leave the apartment, but that

he did not see the face of either man. Later, however, the neighbor said he saw the second man's face twice, the first time as the man closed Stovall's door and the second time when the man turned to look at him. Defendant cites this inconsistency as being indicative of the neighbor's uncertainty as to defendant's identity. Defendant also points out that the description given by the neighbor was not very accurate. The neighbor described the second man as being between 5'8" and 5'10", whereas defendant was 6'1"". Also, the witness did not mention that the man he saw had a mustache; defendant had a mustache at the time of his arrest.

The other part of the State's case was to prove the prior hostility between the victim and defendant. As we stated before, the State's witnesses testified that they saw defendant strike and threaten the victim on the evening of June 7. Defendant points to inconsistencies in the testimony of the State's three witnesses to the encounter. Two of the three were members of the rival gang, and the third was a member of the gang promoted by defendant and the victim. Two testified that the meeting took place at the corner of 68th and Normal, the third said it was at 69th and Normal, a block away. Two thought the incident took place at about 6 p.m., and the third man said it happened at 7:30 p.m. Two stated that defendant wore either a purple or maroon shirt and pants, but the third remembered that defendant wore a gray jumpsuit. Defendant contends that the State's witnesses were confused, and often contradicted their own statements as well as the testimony of other witnesses.

In addition to the evidence already mentioned, the next door neighbor said that the second man leaving Stovall's apartment was wearing an "orange-pinkish suit" and had wavy hair. In fact, defendant had wavy hair. The State produced three witnesses who testified that on the evening preceding the murder, they saw defendant wearing either an orange or red walking suit similar to that described by the next door neighbor. The suit in question was not recovered. Defendant's family testified that they had never known him to have such a suit.

Defendant introduced evidence at trial to support his defense alibi. The substance of the defense is that from about 10 p.m. until 5 a.m. he was at his girl friend's apartment attending a party with his girl friend, his sister, and his brother-in-law. All four testified as to their presence at the party.

Defendant's argument is that he was convicted on circumstantial evidence which was insufficient to support a conviction because it was replete with incredible and uncertain identification testimony by the next-door neighbor, and inconsistent testimony from the State's witnesses to the confrontation between defendant and victim. At the same time, de-

fendant proved with three witnesses that he was elsewhere at the time Clarence Stovall met his untimely end.

■■ It is the jury's function to determine the credibility of the witnesses and the weight to be given their testimony, and the jury's judgment should not be set aside unless it is palpably contrary to the weight of the evidence or so unsatisfactory as to justify a reasonable doubt of defendant's guilt. (*People v. Smith* (1973), 12 Ill.App.3d 507, 299 N.E.2d 492.) The jury heard the evidence in the case and observed the witnesses. The jury found defendant guilty. A court has no obligation "to believe alibi testimony over positive identification of an accused, even though given by a greater number of witnesses. [Citation.] The trier of fact here was in a superior position to observe the demeanor of these witnesses during examination and to consider their obviously strong interest in exonerating the defendant." (*People v. Jackson* (1973), 54 Ill.2d 143, 149.) We have reviewed the evidence and feel that it was sufficient to prove defendant guilty beyond a reasonable doubt. The jury's determination of guilt will not be set aside.

Defendant next contends that the trial court erred in failing to suppress the improper identification testimony. Prior to trial, defendant moved to suppress the out-of-court identification of defendant made by the victim's next door neighbor. A hearing was held on the motion. Briefly summarized, the evidence showed that defendant was identified by the next door neighbor in a room at a police station which contained between one and three male non-police, sitting in an informal setting. The neighbor testified that a police officer asked him whether he could identify a suspect, ushering him into a room. Before the policeman could finish asking the neighbor whether he had ever seen anyone in the room, the neighbor identified defendant as having been the man he saw outside the victim's apartment. The defendant's witnesses testified that the neighbor was unable to identify defendant on his first look in the room, but was able to identify defendant after a policeman told the neighbor that defendant had already escaped conviction for murdering a boy, and that the police did not want defendant to walk the streets this time. Defendant testified that the police placed him and a man with a bloody bandage against a locker and then the next door neighbor made the identification. The police officer who conducted the identification gave substantially the same testimony as did the next door neighbor.

A question was raised as to the next-door neighbor's credibility. He admitted that he told the first investigators at the crime scene that he would not be able to identify the man he saw, yet was able to positively identify defendant.

At the conclusion of the hearing, the trial court noted the absence of a line-up and stated that the State had technically rebutted the defendant's evidence. The motion was denied and, the identification was allowed, with the court stating that as the trier of fact, it made a finding in line with the testimony of the neighbor and the police officer.

Defendant argues that the identification procedure employed was so unnecessarily suggestive as to lead to an irreparably mistaken identification, and that the State has failed to clearly show that the in-court identification was based on an independent origin prior to the improper suggestion.

■■ Based upon the evidence presented at the hearing on the motion to suppress, the trial court weighed the credibility of the witnesses and made its finding of fact which led to the conclusion that the identification procedure employed was not violative of defendant's constitutional rights. The evidence supports this finding. The trier of fact heard the witnesses and observed their demeanor. The trial court's determination will not be set aside.

As for the allegation that the in-court identification was based solely upon the prior identification at the police station, it is sufficient for us to note that even if the prior identification were unduly suggestive, the evidence at trial showed that the next door neighbor clearly saw the defendant's face under a light bulb and was able to fix defendant's identity at trial based upon that full face view. We find no error with regard to the identification of defendant by the next door neighbor.

Defendant's third allegation of error is that the trial court erred in allowing the State to exceed the proper scope of rebuttal testimony in examining a witness, James Harris. Mr. Harris was called as a rebuttal witness after the defendant testified and the defense rested. Defendant argues that Harris was asked questions which exceeded the proper scope of rebuttal testimony since his answers to the questions did not explain, repel, contradict, or disprove the evidence introduced by defendant. We shall examine the questioned testimony in detail.

The first alleged improper rebuttal was when Harris, a member of the gang with which defendant and the victim were associated at the time of the victim's death, testified as to a series of meetings almost every day during the two months preceding the murder during which defendant encouraged fighting the rival gang, but the victim expressed a desire to not fight. The final meeting was on the evening of June 7, when defendant allegedly struck and threatened the victim. On appeal, defendant argues that Harris' testimony was improper because defendant was never asked about these supposed meetings. The record reveals, however, that de-

fendant stated that the last time he was in the victim's neighborhood prior to June 7 was around May 25. Harris stated in rebuttal that defendant had meetings with him and the victim in the victim's neighborhood almost every day for the two months preceding June 7. In this regard, Harris' testimony is directly contradictory to that of defendant. Furthermore, defendant denied participating in street gang activities after 1969. Harris' testimony that defendant was pursuing an active policy of street gang expansion contradicted defendant's testimony.

The second instance of alleged improper rebuttal was when Harris testified that at the next to last meeting, defendant entered with a sawed-off rifle under his jacket to be used for the impending gang fights defendant advocated. Defendant stated that he could only get one gun from the gang's leader at that time. On appeal, defendant argues that such testimony was improper because he did not say anything about receiving guns from the gang's leader. As we noted earlier, however, defendant denied both being an active gang participant and having ever carried a gun, so Harris' rebuttal testimony was proper since it contradicted that which defendant said. Furthermore, defendant failed to object to such testimony at trial, while making objections to other parts of the State's questioning of Harris, which indicates that the rebuttal testimony complained of was not improper or prejudicial to defendant's right to a fair trial.

■■ The final portion of rebuttal attacked by defendant as being improper concern Harris' testimony that defendant told the leaders of the rival street gang to join the street gang with which he was affiliated. Defendant's argument must fail in this regard also because defendant testified under oath that to his knowledge the other gang was not a rival to the street gang to which he was alleged to belong. It is our conclusion, therefore, that the rebuttal witness' testimony was not improper inasmuch as it either directly contradicted defendant's evidence or was not objected to at trial by defendant.

Defendant's final allegation of error is that he was denied due process of law because of the unconstitutional notice of alibi defense statute. (Ill. Rev. Stat. 1971, ch. 38, par. 114—14.) Pursuant to the statute, defendant notified the prosecution of his intent to interpose an alibi defense, and listed his alibi witnesses. At trial, defendant called three of his alibi witnesses. The prosecution then cross-examined these witnesses concerning prior inconsistent statements they made to police investigators shortly after the commission of the offense. and later called the police investigators as rebuttal witnesses to testify as to the prior inconsistent statements. Defendant argues on appeal that the State's failure to notify him

of its intent to call the alibi rebuttal witnesses deprived him of due process of law.

The leading Illinois case on this subject is *People v. Fields* (1975), 59 Ill.2d 516, wherein the alibi defense statute was held to be unconstitutional because it did not provide for the discovery of the prosecution's alibi rebuttal witnesses. Our supreme court held that the defendant's disclosure of his alibi defense and the prosecution's nondisclosure of its alibi rebuttal witnesses was error, which under the facts, was harmless beyond a reasonable doubt. In *People v. Cline* (1975), 60 Ill.2d 561, the court followed the rule in *Fields,* but found under the facts of the case that the exclusion of an alibi witness not listed on the statutory notice of alibi defense was an error which was not harmless beyond a reasonable doubt. It is clear from both *Fields* and *Cline* that the use of the unconstitutional alibi defense statute in the instant case was error, but the question for our determination is whether or not the error was harmless beyond a reasonable doubt.

Defendant notified the prosecution of his alibi defense prior to trial, yet the facts indicate that the prosecution knew the details of the defense because defendant's alibi witnesses had already given statements to police investigators. We feel that the giving of the notice in this case was a formality which did not prejudice defendant.

Defendant argues that reversible error occurred because of the prosecution's failure to inform defendant of its intent to call the investigators as alibi rebuttal witnesses or to supply defendant with copies of the prior inconsistent statements prior to trial. In *Fields,* the evidence pointed overwhelmingly to defendant's guilt, so the prosecution's similar failure to produce the statements in its possession was held not to be reversible error. Fields was closely linked to the offense by the evidence. In *Cline,* however, the only evidence linking defendant to the offense was the testimony of "two alleged accomplices who had pleaded guilty to the crime and who were awaiting disposition of their requests for probation." (60 Ill.2d 561, 566.) Also, defendant Cline's alibi witness was completely excluded from testifying.

■■ In the instant case, Charles Smith was positively linked to the scene of the crime by the testimony of a purportedly unbiased witness. Several other witnesses described how the defendant struck the victim and threatened him with death only 30 hours before the fatal shooting. Defendant was not prevented from presenting any of his alibi witnesses. Furthermore, defendant had been given copies of some of his alibi witness' prior inconsistent statements before trial began. On the basis of this evidence, we believe that the error caused by the operation of the alibi defense statute was harmless beyond a reasonable doubt.

350

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McNAMARA and MEJDA, JJ., concur.