THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT FORD, Defendant-Appellant.

(No. 60549;

First District (4th Division)—November 12, 1975.

Paul Bradley, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Michael E. Shabat, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Robert Ford was indicted for armed robbery (Ill. Rev. Stat. 1973, ch. 38, § 18—2) and unlawful use of weapons (Ill. Rev. Stat. 1973, ch. 38, § 24—1(a)(2)). After a jury trial, he was found guilty of both crimes and sentenced to terms of 7 to 14 years for armed robbery and 1 to 3 years for unlawful use of weapons, with the sentences running concurrently. Defendant appeals and raises the following issues for review: (1) whether the trial court erred by failing to grant defendant's motion for discharge, when the State failed to bring him to trial within 120 days; (2) whether the State proved the defendant's guilt beyond a reasonable doubt; and (3) whether the closing rebuttal argument of the prosecutor was inflammatory and prejudicial.

The defendant was arrested on February 13, 1973, indicted on May 1, 1973, and arraigned on May 8, 1973. He entered a plea of not guilty to the charge and the public defender was appointed to represent him. On May 9, 1973, the defendant answered ready for trial, but his attorney, who had been appointed the day before, informed the court that he was not ready for trial so he filed a motion for discovery and made a motion for a continuance. The court continued the case by agreement and noted in the record that defendant answered ready for trial while his attorney answered not ready. On August 6, 1973, the defendant filed a motion for discharge because of the State's failure to bring him to trial within 120 days.

The trial commenced September 25, 1973, and the complainant, Haywood Tolbert, was called to testify. Mr. Tolbert testified that he left work and arrived home at 4635 South Michigan, at 4:10 or 4:15 p.m. He entered the lobby with a key in his left hand when a man placed a knife to his neck and said, "Keep quiet old man. Won't nothing happen to you." The complainant then turned around and shot the defendant in the leg with a gun in his right pants pocket. After shooting Ford, Tolbert testified that the defendant told an accomplice, "The old [expletive deleted] has shot me." The accomplice struck the complainant on the right side of his face, knocked him to his knee, tore his pocket, and wrestled the gun from him, along with his wallet and some change. When the men ran out of the building, the witness went to Miss Simpkins' apartment which is located on the first floor and called police. The police arrived and complainant gave them a discription of the

confederates and went upstairs to change clothes. Then, he was taken to the hospital, treated, and released. Upon leaving the hospital, he went to the police station and viewed some suspects but was unable to make an identification. However, Tolbert testified that the accused, one of the men in the lineup stated, "That's the old man that shot me."

Officer Warnke, the next witness, testified that he went to 4635 South Michigan to answer an injured person call. When he entered the building, he saw a "red substance" in the hallway as he proceeded to Tolbert's apartment. The officer entered the apartment and noticed that the complainant's right eye was swollen and had blood on it. After conversing with the complainant, Officer Warnke returned to the lobby of the apartment building. He discovered that the red substance led out the door so he returned to Tolbert's apartment to get his partner, called for an assist car, and followed the trail on foot. While following the red substance, the officer found the complainant's wallet in an alley. The trail ended at 4534 South Indiana in a third-floor apartment. Here, the officers found the defendant under a bed with a gunshot wound in his right leg and a small knife was lying on top of the bed. The defendant was apprised of his rights, arrested, and taken to the hospital.

Investigator Green, the third witness, testified that Mr. Tolbert was brought into his office where he and other officers talked with the robbery victim. Then the officers contacted Joe Fagan, as assistant State's attorney, who interviewed Tolbert. A lineup was held and, although Tolbert was unable to identify the perpetrator of the crime, the witness testified that Ford identified Tolbert as the man who shot him. Following the identification, the witness stated the defendant made a statement that was reduced to writing.

Joseph Fagan corroborated Investigator Green's lineup testimony and stated that he interviewed Ford. In the oral statement the defendant said that he had been shot on Michigan or Indiana, but did not know why he was shot; that he was visiting someone and was not certain but thought Tolbert was the man who shot him. Although defendant was questioned by the State's attorney and his answers reduced to writing, he refused to sign the statement because he did not have his glasses.

Robert Ford, the sole defense witness, began his testimony by stating that he had been convicted of four prior offenses. Ford testified that he met Tolbert between 46th and 47th Street on Michigan. Ford testified that he was shot as he walked around Tolbert on Michigan, and that he went to a Mrs. Clay's apartment at 4634 South Indiana on the second or third floor. While Mrs. Clay was out to get a cab, the witness testified that the police came in and arrested him. Ford stated that he was taken

to the hospital for treatment and then to the police station. A lineup was held and Ford testified that he identified Tolbert as the man who shot him.

Miss Pricilla Simpkins, a first-floor resident in Tolbert's building, was called as a rebuttal witness. She testified that Tolbert rang her bell on February 13, 1973, at about 4:15 p.m. She stated that his face was swollen and his right pants pocket was torn.

■■ The defendant argues that the trial court erred by failing to grant his motion for discharge because the State failed to commence prosecution within 120 days as required by the speedy trial provision in the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1973, ch. 38, § 103—5.) Defendant submits that he was entitled to be discharged on August 6, 1973, unless the continuance granted at the May 9, 1973, proceedings was a delay attributed to him. The record indicates that the court continued the case by agreement so the defendant's attorney could prepare for trial. However, the court noted in the record that the defendant answered ready.

In *People v. Carr* (1972), 9 Ill.App.3d 382, 383-84, 292 N.E.2d 492, the court said:

> "* * * [C]ounsel for the defense stated that he needed more time for preparation, and desired a continuance of the case, in which the State concurred. The defendant, notwithstanding his counsel's wish, wanted a trial at once. Nevertheless, the Assistant Public Defender representing defendant advised him in the presence of the court that he needed more time, and the continuance was then granted on that request. While the defendant continued to strenuously object, he did not discharge his attorney, and that counsel continued to represent defendant throughout the trial, and indeed in this court.
>
> If the court had acceded to defendant's demands, and had defendant been found guilty, the question would surely have arisen as to whether defendant had been denied the effective assistance of counsel who had stated that he was not prepared to defend. The four-term act was not violated and the court took proper action in continuing the case."

The fact situation in the instant case is exactly like that in *Carr*. The defendant herein demanded trial, while his attorney requested a continuance. The trial judge, who was interested in the defendant's due process rights, decided to grant defense counsel's request for a continuance to insure that the accused had a fair trial. In light of the trial judge's dilemma, we hold that the continuance "by agreement" was one occasioned by defendant's attorney and is, therefore, attributed to him.

Where appointed counsel requests a continuance on the ground that he requires more time for preparation, it is not an abuse of discretion for the court to grant the request notwithstanding defendant's repeated strenuous objections and notwithstanding that the continuance is chargeable to defendant so as to extend his four-term period. *People v. Williams* (1973), 14 Ill.App.3d 572, 577, 303 N.E.2d 575.

Defendant relies on *People v. Ward* (1973), 13 Ill.App.3d 745, 301 N.E.2d 139, and *Faretta v. California* (1975), 422 U.S. 806, 45 L.Ed.2d 562, 95 S.Ct. 2525, as authority for the proposition that his demand for trial takes precedence over counsel's request for a continuance to prepare. We think that *Ward* is inapposite because of the nature of the motion that was made therein. In that case the defendant's attorney made a motion for a list of witnesses and statements, and the court held that such a motion does not occasion a delay. A motion for a continuance, which is the type of motion involved in the case at bar, occasions a delay chargeable to a defendant. *Faretta,* on the other hand, considered the question of whether a defendant in a State criminal trial had a constitutional right to proceed without counsel when he voluntarily and intelligently elected to do so. Although the court held that a defendant has a constitutional right to conduct his own defense, we do not think that right was abrogated or infringed upon in the instant case by granting counsel a continuance to prepare.

■■■ Defendant's next contention is that the State failed to prove his guilt beyond a reasonable doubt. We disagree with this contention. In this State armed robbery is committed by taking property from the person or presence of another by the use of threat of force, while armed with a dangerous weapon. (*People v. Jones* (1973), 53 Ill.2d 460, 463, 292 N.E.2d 361.) The defendant, relying on *People v. Campbell* (1908), 234 Ill. 391, 84 N.E. 1035, points out that there must be an actual taking of property. We think the evidence establishes that property was taken from the complainant. Tolbert testified that he was pushed to the ground and the defendant's accomplice tore his pocket and took a gun, his wallet, and some small change. The gun, wallet, and change qualify as property even though their value is *de minimis.* (*People v. Smith* (1966), 66 Ill.App.2d 257, 213 N.E.2d 135; Ill. Rev. Stat. 1973, ch. 38, § 15—1.) Force was employed when the property was appropriated, and the defendant was armed with a dangerous weapon while committing the crime. The evidence revealed that the accused placed a knife with a short blade around the complainant's neck, and his property was taken against his will. If the confederate is armed with a dangerous weapon, the type of weapon used is not a material element of the offense. (*People v. Wyatt* (1974), 23 Ill.App.3d 587, 590, 319 N.E.2d 575.) A knife has

been found to be a dangerous weapon (*People v. Elam* (1972), 50 Ill.2d 214, 220, 278 N.E.2d 76), and we think that the knife in the instant case, although it had a "short blade," was equally dangerous. In spite of the fact that the defendant does not admit perpetrating the robbery, he did testify that he met Tolbert on Michigan and that he was shot in the leg. On cross-examination, the defendant testified that he took a shortcut through an alley to get to the apartment on Indiana. It was in this alley that the complainant's wallet was found. When the defendant was arrested, a knife was found on top of the bed under which he was hiding. We think that the evidence established that the defendant forcibly took property from the complainant while armed with a dangerous weapon and that his guilt was thereby proved beyond a reasonable doubt.

■■ The defendant also argues that the State failed to prove his guilt beyond a reasonable doubt on the unlawful use of weapons charge. We do not reach this issue, however, because where two offenses arise out of the same transaction, the conviction and sentence should be only as to the greater offense. (*People v. Lilly* (1974), 56 Ill.2d 493, 309 N.E.2d 1; *People v. Bartels* (1975), 30 Ill.App.3d 551, 333 N.E.2d 457.) Accordingly, under *Lilly*, the conviction for unlawful use of weapons will be vacated.

Defendant's final contention is that the closing rebuttal argument of the prosecutor was inflammatory and prejudicial. He quotes the following from the prosecutor's argument:

> "I don't ask you to be sorry for Robert Ford because he has been in trouble in the past, ladies and gentlemen. I can't ask you to be sorry for a man like that. I can't ask you to be sorry for a convicted dope peddler, a convicted burglar, a convicted robber. I can't ask you to be sorry for that man. But I can tell you, ladies and gentlemen, that that is a cool ex-convict.
>
> \* \* \*
>
> Ladies and gentlemen, Robert Ford took the stand, and I will say he was cool on the stand. I will say he has a lot of experience. But at the beginning of this case we told you, his Honor told you, if the defendant does not take the stand, you can't hold it against him; but if he does take the stand, you judge him as any other witness.
>
> Ladies and gentlemen, I ask you to judge Robert Ford against Haywood Tolbert, against Officer Warne [*sic*], against Investigator Green, against Assistant State's Attorney Fagan.
>
> I ask you to judge him based on that, and judge him based on his

prior, let's say, problems with the law, as counsel puts it, his prior dope peddling, his prior burglaries, his prior robberies, his prior aggravated battery, and ask you to judge against the people who took the stand and what they had to say."

The defendant argues that the prosecutor's use of his prior convictions was improper, and he cites *People v. Montgomery* (1971), 47 Ill.2d 510, as authority for his position. We think that his reliance on that case is misplaced. *Montgomery* merely held that the use of a 21-year-old conviction was improperly admitted since it bore no rational relationship to the defendant's present credibility. In the instant case, the prior convictions were properly admitted.

Although it is improper for a State's attorney to make an argument to the jury indicating a disregard for the preservation and protection of the accused's statutory and constitutional rights (*People v. Grizzel* (1943), 382 Ill. 11, 22, 46 N.E.2d 78), we recognize that it is difficult to draw the line between allowable argument and improper statements in argument since each side has, of necessity, much latitude in the language and manner of presenting his side of the case. (*People v. Durham* (1971), 131 Ill.App.2d 1033, 1038, 269 N.E.2d 348; *People v. Smith* (1972), 6 Ill.App.3d 259, 263, 285 N.E.2d 460.) Frequently, a prosecutor's statements are highly damaging, likely to influence the result, and yet within bounds. (*People v. Weaver* (1972), 7 Ill.App.3d 1104, 288 N.E.2d 669.) However, the State can exceed the permissible bounds, for instance, when they comment on the failure of the accused to take the stand. (Ill. Rev. Stat. 1973, ch. 38, § 155—1.) Nevertheless, the law is clear that the attorneys on both sides may draw conclusions on facts brought to the jury's attention during the trial. *People v. Williams* (1968), 40 Ill.2d 522, 529-30, 240 N.E.2d 645, *cert. denied*, 393 U.S. 1123, 22 L.Ed.2d 129, 89 S.Ct. 1004.

■■ The defendant's prior convictions, which are complained about herein, were introduced by the accused at the outset of his testimony, and the trial judge instructed the jury to consider evidence of the defendant's previous convictions only insofar as it affected his credibility as a witness. Defendant concedes that counsel may comment on the character and credibility of the accused when the evidence justifies it (*People v. Jackson* (1974), 19 Ill.App.3d 689, 695, 312 N.E.2d 405; *People v. Stephens* (1973), 13 Ill.App.3d 642, 649, 301 N.E.2d 89), and it does in this case. The State may comment on the fact that the accused had been indicted or convicted of crimes other than that for which he is on trial (*People v. Ostrand* (1966), 35 Ill.2d 520, 531-32, 221 N.E.2d 499; *People v. Jones* (1970), 125 Ill.App.2d 168, 176, 260 N.E.2d 58), where

evidence supporting the particular reference is properly before the jury. Here, counsel merely compared defendant to the State's witnesses and that is permissible.

We hold that the defendant's prior convictions were facts in evidence and that it was proper for the State's attorney to comment on these facts since they went to the issue of the witness' credibility. We do not think the prosecutor's closing rebuttal argument was so prejudicial and inflammatory as to require a reversal.

The conviction of the defendant for unlawful use of weapons is vacated and the conviction for armed robbery is affirmed.

Vacated in part; affirmed in part.

ADESKO and BURMAN, JJ., concur.