THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ERNEST STINSON, Defendant-Appellant.

First District (1st Division)   No. 60783

Opinion filed March 29, 1976.

230

James J. Doherty, Public Defender, of Chicago (Marilyn D. Israel, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Linda Ann Miller, and William J. Stacy, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

Defendant, Ernest Stinson, was found guilty of robbery by a jury and sentenced to imprisonment for a term of 4 to 12 years. He was tried with Rudolph Scott, who waived a jury, and was found not guilty by the court.

This appeal raises the following issues: Was the defendant denied due process of law when required to provide the prosecution with his alibi defense prior to trial; Did the State fail to provide the discovery required by the Supreme Court Rules and was the defendant prejudiced; Did the failure of the State to produce photographs used to identify the defendant deprive him of constitutional rights; Were the pretrial identification procedures impermissibly suggestive; Was the defendant proved guilty beyond a reasonable doubt; Was the sentence excessive?

The victim of the robbery was Joseph Taussig. At approximately 11:30 p.m. on July 14, 1972, as he was about to enter his car in the Grant Park underground garage in Chicago, a man who Mr. Taussig later identified as the defendant approached him and said, "Man, I want to talk to you." Mr. Taussig glanced to his left and saw another man while responding he had nothing to interest the person who accosted him. The man repeated his statement and Mr. Taussig made the same reply. The two men then attacked Mr. Taussig, one got a headlock on him and he was hit with the butt of a pistol. Mr. Taussig lost consciousness and did not see either of the men after that. He remembered someone being on his back and removing his wallet from his back pocket. Mr. Taussig lost his wallet containing credit cards including Standard and Shell cards.

On July 21, 1972, O. G. Simmons, deputy sheriff of Bowling Green, Kentucky, was called to a Standard Oil station where the defendant was attempting to use a credit card issued to Mr. Taussig to purchase tires.

The report from the station was of an attempted use of a stolen credit card. As the deputy sheriff arrived, the defendant fled, and when he was stopped the deputy sheriff found various credit cards, including a Shell card issued to Joseph Taussig, in the defendant's car. The defendant admitted telling the officer his name was Joseph Taussig. The deputy sheriff identified a photograph of the car taken in Bowling Green as the one defendant was driving at the time of his arrest, and testified the Indiana license plates on the car in the picture were the same plates the car had when defendant was arrested.

The defendant testified he did not take the credit cards in his possession at the time of his arrest from Mr. Taussig. His explanation was that he had been in Indianapolis on the night of July 14. He left Indianapolis about 1 or 2 in the morning and arrived in Chicago at dawn on July 15. On that day he purchased Mr. Taussig's credit cards for $50 from two men he did not know who approached him in a tavern in Chicago. The defendant further testified that he was on his way to his company's home office in Fort Lauderdale, Florida when he was arrested on July 21, 1972, in Bowling Green, Kentucky. On July 20, as he was leaving the Fort Wayne area, he picked up Scott whom he did not know. He stated Scott looked like a hitchhiker so he gave him a ride.

Over defense objection, the prosecution was permitted to cross-examine defendant about the photograph of the automobile taken in Bowling Green. Defendant identified it as his car and testified he drove it to Chicago from Indianapolis on July 15, 1972, and if it was a picture of the car he had in Bowling Green, Kentucky it was the same car he had in Chicago on July 15. He also testified he purchased the car in Indianapolis on July 14, 1972 at approximately 6 or 7 p.m. and that the dealer gave him Indiana dealer's license plates 4246 M 5. This was the license plate number on the car in the photograph taken in Kentucky, and it was the license plate number on a Shell gas receipt also offered in evidence over the defendant's objection.

The Shell gas receipt was dated July 14, 1972, the date on which Mr. Taussig was robbed. The receipt was in the name of Mr. Taussig. It showed gas was put into a car bearing the Indiana license plate number of defendant's car, and the card to which the charge was made was one of the credit cards stolen from Mr. Taussig. The Shell station at which this purchase was made is approximately 8 to 10 minutes driving time distance from the underground parking facility at which Mr. Taussig was robbed.

Three days after the defendant and Scott were arrested in Bowling Green, Kentucky, the Chicago police showed Mr. Taussig one photograph of the defendant and one of Scott obtained from the Bowling Green authorities, together with three other photographs. The other three

were selected by the police from a large file of similar-type photographs. The photographs were all of black males. The three additional photographs were chosen from an age group of 25 to 35 years and were of persons weighing between 125 to 135 pounds to 170 to 200 pounds. The defendant was 35 years old and Scott was 43 years old. Mr. Taussig testified that the defendant weighed between 175 and 190 pounds. He also testified that he believed the picture of defendant he selected showed him with a mustache. One or two of the persons whose pictures were among those shown to Mr. Taussig had mustaches. After studying the photographs for a short period of time, Mr. Taussig selected the pictures of the defendant and Scott.

The State was unable to produce the five photographs shown to Mr. Taussig as the photographs of the defendant and Scott had been lost or mislaid and the other three pictures had been returned to the files of the Chicago Police Department without any identification.

Mr. Taussig never viewed a lineup to identify his assailants. He appeared at the preliminary hearing where the defendant and Scott were present and identified both of them at that time. Mr. Taussig's testimony on a motion to suppress his identification of the defendant was that he did not know whether he gave a description of his attackers to the first police officers responding to his call. He went to the garage with another group of officers and does not recall whether he gave them a description either.

■■ Although the record is barren of any motion by the State to require the defendant to file notice of an alibi defense, the defendant filed a document entitled, "Answer to People's motion for Pretrial Discovery." This document, filed on the first day of the 3-day trial, indicated defendant's alibi defense was that he was in Indianapolis at the time of the offense. Defendant's position is that he was required by an unconstitutional Illinois statute to disclose his alibi, and was deprived of due process by being denied reciprocal discovery with respect to the picture of his car, the Shell receipt and the identity of a State rebuttal witness, Roosevelt Patterson, who was the proprietor of the Shell station at which the gas was purchased. The defendant relies on *Wardius v. Oregon* (1973), 412 U.S. 470, 37 L.Ed.2d 82, 93 S.Ct. 2208, and *People v. Fields* (1974), 59 Ill.2d 516, 322 N.E.2d 33. The State asserts that *Wardius* should not be applied retroactively. We disagree with the State's position, on the authority of *People v. Lucien* (1975), 34 Ill. App. 3d 161, 340 N.E.2d 65, and also because defendant's trial took place after the Supreme Court decision in *Wardius*. However, it is unnecessary to dwell on the retroactive applicability of *Wardius* because as the court held to be the case in *Fields* and *Lucien*, the defendant was not prejudiced by the physical evidence and the identity of the witness defendant claims were withheld.

Moreover, due process was not violated because the defense did not establish that Mr. Patterson, the Shell receipt and the picture of the car were produced as a result of the defendant's disclosure of his alibi defense. Knowing credit cards had been stolen, reasonable care in preparation would have required the State to examine all charges to Mr. Taussig's credit cards not bearing his signature. This would have led the State to the purchase at the Shell station which was the first purchase after the robbery and to its proprietor, Mr. Patterson. Mr. Patterson's testimony did not relate directly to the defendant's alibi; it only covered the record-keeping procedures in his business. The picture of the car taken in Kentucky was in the State's possession for approximately a year prior to trial. If factors independent of the defendant's discovery response brought the rebuttal witness or documentary evidence to the State's attention, the use of the evidence by the State is not precluded by the notice which the defendant was improperly required to give. *United States ex rel. Owens v. Twomey* (7th Cir. 1974), 508 F.2d 858.

Moreover, if there was an unconstitutional violation of due process, the error was harmless beyond a reasonable doubt. (*Harrington v. California* (1969), 395 U.S. 250, 23 L.Ed.2d 284, 89 S.Ct. 1726; *Chapman v. California* (1967), 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824; *People v. Fields* (1974), 59 Ill.2d 516, 322 N.E.2d 33; *People v. Lucien* (1975), 34 Ill. App. 3d 161, 340 N.E.2d 65.) The manner in which defendant claims he was harmed by the nondisclosure is that had he known of the existence of the picture, the receipt and Mr. Patterson, he might have elected not to take the stand in his own defense.

So far as the photograph of the car is concerned, the record does not establish that this was not available for the defendant's inspection. The objection to the photograph was not made when it was offered in evidence, but after the defendant rested and consequently was waived as not being timely. The defendant conceded that the photograph was of his car, and his counsel did not request any continuance, as contemplated by Illinois Supreme Court Rule 415(g), to prepare to meet the use of the photograph by the prosecution. Defendant's explanation as to how he was prejudiced cannot apply to the photograph of the car as it was disclosed before the defendant took the stand.

The Shell receipt was not displayed to the defendant in advance of trial because he refused to provide a handwriting exemplar to compare with the signature on that receipt as well as other receipts charged to Mr. Taussig's credit cards. The prosecutor referred in open court 8 months before the trial to receipts for various credit-card charges after the robbery, and their existence was known to the defendant even though they were not displayed to him. His intransigence in resisting the State's effort to obtain a sample of his handwriting justified the State's refusal to display the re-

ceipts on which the State claimed the defendant wrote Mr. Taussig's name. After the defendant was confronted with the Shell receipt on cross-examination, his counsel requested and was granted a recess prior to his redirect examination. The defendant's contention that had he known about the existence of this receipt and that Mr. Patterson would testify he might not have taken the stand places him in an anomalous position. If his Indiana license plate number was on the receipt, he must have known of its existence. Since he was already on the stand when the receipt was displayed to him, he could have explained how his license plate number appeared on the receipt or if the receipt contained the customer's signature, he could have denied it was his handwriting. In any event, the defendant's contention is tantamount to saying he would not have perjured himself had he known he would be impeached. The protection the law gives a person accused of crime should not extend to prejudice or harm he brings upon himself by his own untruthfulness. Also, had the defendant refrained from attempting to explain how the credit cards came into his possession, his conviction would have been virtually assured.

■■ So far as Mr. Patterson is concerned, the State was not required to inform the defendant he might be called as a rebuttal witness until the intent was formed to call him. (*People v. Manley* (1974), 19 Ill. App. 3d 365, 311 N.E.2d 593.) The State's list of witnesses was filed in October 1972. Although it had the duty of updating the list as it formed the intent to call additional witnesses, the State could not have decided to call Mr. Patterson as a rebuttal witness until the alibi defense was presented on July 24, 1973. It noticed the defendant in open court on July 25, 1973, that it would call Mr. Patterson and he testified on July 26, 1973. Defendant did not request additional time to prepare to cross-examine Mr. Patterson, and does not claim his cross-examination would have differed had his identity been disclosed to the defendant on the same day the notice of alibi defense was filed. We conclude that notice to the defendant on the day after he filed his alibi defense that Mr. Patterson would be called as a rebuttal witness the next day was adequate under the circumstances.

■■ The State's failure to produce the five photographs displayed to Mr. Taussig for the purpose of identification was not equivalent to an unlawful suppression of evidence. Unrefuted evidence established that the photographs were not in the control of the State and it was impossible for the State to make them available. In addition, the defendant did not show that there was any possibility that the photographs displayed to Mr. Taussig suggested an identification to him which was suggestive. The three photographs of persons other than the defendant and his codefendant were in the age and weight group corresponding to that of the defendant. Since Mr. Stinson had a thin mustache when arrested in Bowling

Green, Kentucky, the inclusion of pictures of persons having mustaches did not prejudice the defendant. The record does not meet the requirement imposing on a defendant who seeks to suppress an in-court identification the burden of establishing that the pretrial identification procedures were so suggestive as to give rise to a substantial likelihood of irreparable misidentification. *People v. Griffin* (1973), 12 Ill. App. 3d 193, 198, 297 N.E.2d 770.

■■ After selecting a photograph of the defendant, Mr. Taussig identified him at the preliminary hearing. The defendant contends the identification at the preliminary hearing was equivalent to a showup. The cases, however, relied on by the defendant for the unreliability of a showup such as *People v. Gardner* (1966), 35 Ill.2d 564, 221 N.E.2d 232, involve initial identification after confrontation of a lone suspect by the identification witness rather than a situation where, as here, a photographic selection of the accused preceded the identification. Although a lineup would have been preferable to the identification procedures employed, there is no requirement in Illinois that a lineup be held (*People ex rel. Blassick v. Callahan* (1972), 50 Ill.2d 330, 334, 335, 279 N.E.2d 1), and the positive identification of an accused by a victim who closely observed him at the time of the crime is not discredited by lack of a lineup. (*People v. Ward* (1973), 13 Ill. App. 3d 745, 751, 301 N.E.2d 139.) Mr. Taussig was confronted by the defendant prior to being attacked and had a good opportunity to view him. His in-court identification of the defendant was admissible since it was based on this prior independent origin and arose from an earlier uninfluenced observation of the defendant (*People v. Carroll* (1973), 12 Ill. App. 3d 869, 874, 299 N.E.2d 134), as well as Mr. Taussig's selection of the defendant's photograph and his subsequent identification of the defendant at the preliminary hearing.

■■ The determination of the jury that the defendant was guilty cannot be disturbed unless the evidence is so unsatisfactory or improbable as to raise a reasonable doubt of guilt. (*People v. Benedik* (1974), 56 Ill.2d 306, 310, 307 N.E.2d 382.) Without dwelling on each link in the proof against the defendant it consists of Mr. Taussig's identification, the defendant's use of the credit cards in the week preceding his arrest, the discovery of the defendant in Bowling Green, Kentucky, with Mr. Taussig's credit cards in his possession, and his attempt to question him about the Standard Oil credit card. The final piece of evidence establishing guilt was proof that a person with a car bearing the license plates affixed to the defendant's car purchased gas shortly after the robbery at a Shell station within 10 minutes driving distance of the robbery. This evidence, in addition to discrediting defendant's alibi, also showed that the defendant used Mr. Taussig's credit card within a half hour of the robbery.

■■ Even though defendant's record of previous convictions was for

minor offenses and he received an honorable discharge after 4 years of service in the air force and was gainfully employed, the sentence imposed was not excessive. The crime was a brutal one in which the victim was physically attacked and knocked out, and it was then aggravated by the defendant's use of the credit cards for the next week. There is no substantial reason for this court to reduce the sentence imposed. *People v. Sprinkle* (1974), 56 Ill.2d 257, 264, 307 N.E.2d 161.

Judgment affirmed.

GOLDBERG, P. J., and BURKE, J., concur.